819 P.2d 1351

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Eutimio Jesse SALGADO, Defendant–Appellant.**

No. 12598.

Court of Appeals of New Mexico.

Sept. 26, 1991.

Bivins, J., filed a concurring and dissenting opinion.

See also 112 N.M. 537, 817 P.2d 730.

Tom Udall, Atty. Gen. and Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Robert J. Jacobs, Taos, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals his convictions for aggravated assault with a deadly weapon with a firearm enhancement and two counts of aggravated battery with a firearm enhancement. He contends the trial court erred in excluding testimony concerning one victim's predilection for violence and in refusing to give certain jury instructions. We reverse on the first issue and therefore need not address the second.

## FACTS

Defendant raised the issues of self-defense and defense of others. His version of the pertinent facts, most of which were contradicted by other witnesses, is as follows. Defendant, his father, and a friend named Edwin Vigil were walking on a sidewalk. One of the victims, named Sam Romero, drove by and pulled up next to the sidewalk. A verbal argument ensued, which ended when Romero jumped the curb with his car and attempted to run over defendant's father. After buying a six-pack of beer and consuming it with the other two men, defendant decided to go talk to Romero to determine what caused the earlier altercation. Defendant and Vigil walked to Romero's home and entered. Vigil, who was also Romero's neighbor, went into the kitchen and greeted Romero. Romero and Vigil then came out of the kitchen and Romero saw defendant, whereupon he turned around and re-entered the kitchen. Vigil and defendant followed. As they entered the kitchen, Romero grabbed a steak knife and took several steps toward Vigil. Defendant pulled out a gun and told Romero to drop the knife. Instead, Romero took another step toward Vigil with knife in hand. Defendant then shot Romero, shot a man who had been sitting in a chair near defendant but had jumped up at the first shot, and shot at another man who also jumped. Defendant and Vigil then hurriedly exited the house.

At trial, defendant attempted to testify about Romero's reputation in the community for violence. He testified on direct examination that he knew Romero for maybe three years. The state objected, arguing in essence that defendant could not himself testify about Romero's reputation, but had to bring in another witness to do so. Defense counsel responded by contending that defendant's knowledge of Romero's violent character explained why defendant had reacted with such force to Romero's actions in the house. Counsel argued that defendant had heard that Romero would threaten to shoot young men who were dating his daughters, and had bragged about wearing a chain of people's ears around his neck when he was in Vietnam. The court ruled that the evidence was hearsay and refused to allow the questioning. Defendant then made an offer of proof in which he testified that Romero's reputation in the community for violence was "bad." The basis for defendant's view of Romero's reputation was his knowledge of Romero's alleged actions in Vietnam, cutting off people's ears and wearing them around his neck, and his alleged statements that he "had a bullet" for anybody involved in disputes about his daughters. Following the offer of proof the trial court reiterated its ruling.

## DISCUSSION

Defendant's proffered testimony consisted of two types of testimony, general testimony about Romero's reputation for violence, and evidence of specific instances of conduct that gave rise to the asserted reputation. *See* SCRA 1986, 11–405(A) (reputation evidence) and (B) (specific conduct). We must decide whether the trial court abused its discretion in excluding this evidence. *See State v. Ewing,* 97 N.M. 235, 638 P.2d 1080 (1982) (admission of character testimony is a matter within the sound discretion of the trial court). Under the circumstances of this case, we hold that the reputation evidence and the Vietnam conduct evidence was of such importance to defendant's defense that the exclusion was an abuse of discretion. *See State v. Dun-*

*can,* 111 N.M. 354, 805 P.2d 621 (1991) (evidence of coercer's character was so important to defendant's duress defense that it was an abuse of discretion to exclude it). We need not address the testimony concerning Romero's alleged threats against his daughters' boyfriends, although we are inclined to agree with the state that this testimony was vague and not as probative of character as actual actions, and the exclusion of the testimony therefore was not an abuse of discretion.

▇ In self-defense or defense-of-others cases, evidence of the victim's character may be admissible to show either defendant's reasonable fear and response under the circumstances, or that the victim was the aggressor. *Cf. State v. Montoya,* 95 N.M. 433, 622 P.2d 1053 (Ct.App.1981). The victim's reputation for violence and any prior violent acts committed by the victim are relevant to both issues. *State v. Melendez,* 97 N.M. 740, 643 P.2d 609 (Ct. App.1981), *rev'd on other grounds,* 97 N.M. 738, 643 P.2d 607 (1982) (tendered evidence of victim's reputation for violence was relevant to defendant's claims that occupants of a car were aggressors and that he had reasonable apprehensions for his life and safety). Contrary to the trial court's ruling, the hearsay rule is no bar to the introduction of such testimony, at least where, as here, the testimony is offered not for the truth of the matter asserted, but to show defendant's state of mind. *See* SCRA 1986, 11–801(C); *see also* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* § 405[2] (1990) (reputation evidence is admissible despite the hearsay rule).

On appeal, the state has not attempted to defend the trial court's use of the hearsay rule to exclude the evidence. Instead, the state argues that the court had discretion to exclude the evidence and the court's decision should be upheld under the "right for any reason" doctrine. *See State v. Beachum,* 83 N.M. 526, 494 P.2d 188 (Ct. App.1972) (trial court's decision will be affirmed if it is right for any reason, even if court offers erroneous rationale for its ruling). We are not convinced this is an appropriate situation in which to apply the doctrine. It is one thing to hold that, although the trial court's rationale was wrong, another reason justifies the court's decision. It is entirely another matter to hold that if the court had not been led astray, and had known it had discretion to admit or exclude the evidence under a different rule of evidence, it definitely would have exercised that discretion to exclude rather than admit the evidence. To affirm the trial court, we would have to predict that even if the court had realized the evidence was admissible, the court would have excluded it anyway in the exercise of its discretion. This would be a difficult task. *Cf. State v. Duncan* (abuse of discretion analysis is unnecessary where trial court did not exclude evidence using the balancing test of Rule 403, but instead excluded evidence under Rule 404); *State v. Ferguson,* 111 N.M. 191, 803 P.2d 676 (Ct.App.1990) (discussing the necessity for trial courts to spell out the reasons for exercising their discretion, so the appellate court can determine whether the exercise of discretion had an erroneous legal basis). Neither party briefed this issue and we need not address it further.

▇ Romero's purported reputation for violence and his alleged gruesome behavior in Vietnam were obviously important factors in explaining why defendant reacted so strongly during the incident. If the jury had believed defendant's description of Romero's personality and had believed that defendant really did think Romero had cut off people's ears in Vietnam, it would have gone a long way toward explaining why defendant thought it was necessary to take a gun with him to Romero's house and to use it during the incident. Without such testimony, all the jury knew was there had been an incident earlier that day, during which no physical contact had occurred, and defendant consequently felt he needed to be armed before talking with Romero. This information, standing alone, was a much less convincing explanation of

defendant's actions than it would have been had the jury also known that defendant thought of Romero as a violent individual who would not hesitate to use the knife he held as he approached Vigil. By excluding this evidence, therefore, the trial court prevented defendant from developing a major part of his defense. This deprivation was an abuse of discretion. *Cf. State v. Duncan* (where evidence is of great importance to a defense, exclusion of that evidence would be an abuse of discretion).

The state raises several arguments in support of its position that exclusion of the evidence was not an abuse of discretion. First, the state argues the evidence was cumulative. Defendant presented evidence concerning the prior incident in which Romero allegedly drove his car over the curb toward defendant, Vigil, and defendant's father. There was also testimony, corroborated by Vigil, that Romero was approaching Vigil with a knife when defendant shot Romero. According to the state, this evidence was sufficient to explain why defendant thought it necessary to arm himself before talking to Romero and to use the weapon during the confrontation at the house. As we have discussed above, however, this information does not have the same convincing impact without the background knowledge concerning defendant's view of Romero's reputation and his knowledge of Romero's past conduct. In addition, Romero denied that he had jumped the curb with his car and testified instead that defendant and his father kicked the car and were the aggressors in that incident. He also contradicted defendant's and Vigil's testimony concerning the shooting, claiming that he did not pick up a knife and did not approach Vigil. Other witnesses of the shooting corroborated Romero's account. Since there was radically conflicting evidence about the incidents, defendant's testimony about Romero's reputation and past conduct was necessary to help the jury resolve the conflicts and decide who the aggressor was. *Cf. State v. Brenner,* 53 Wash.App. 367, 768 P.2d 509 (1989) (where witness's own testimony established his aggressiveness, exclusion of evidence concerning witness's past aggressive acts was not an abuse of discretion, because defendant was not denied his right to argue his theory of the case).

■ The state also argues that there was no evidence that defendant knew of Romero's reputation or his past specific conduct at the time of the shootings. Where character evidence such as this is offered to establish a defendant's reasonable apprehension of danger, the defendant must show he knew of the reputation or conduct at the time of the incident. *State v. Ewing.* During the offer of proof made through defendant's own testimony, he never specifically stated that he knew of Romero's reputation or the Vietnam conduct on the day of the shooting. However, defense counsel had earlier explained to the trial court, in summary form, what defendant's testimony would be if he were allowed to testify. Counsel stated that defendant had heard Romero threaten to shoot young men who were dating his daughters and had heard Romero was bragging about carrying people's ears around his neck in Vietnam, and that defendant had these remarks in mind during the incident. This was in effect an offer of proof through counsel that sufficiently apprised the trial court that the time period in question, regarding the issue of defendant's knowledge, was the time of the incident. *Cf.* SCRA 1986, 11–103(A)(2) (substance of excluded evidence must be made known to judge by offer or be apparent from context in which questions were asked).

■ The state maintains there was no abuse of discretion because the alleged conduct in Vietnam occurred long before the shooting. *See State v. Ewing* (no abuse of discretion in exclusion of thirty-two and thirty-three-year-old convictions, even if defendant had shown he knew about the convictions). We point out, first of all, that this argument has no applicability to the pure reputation testimony proffered by de-

fendant, to the effect that Romero's reputation in the community for violence was bad. In addition, under the circumstances of this case, we do not agree with the state's argument regarding the Vietnam conduct testimony. If the evidence of this conduct had been offered to prove Romero was the aggressor, the state's argument would have greater force. Actions taken during a war, fifteen or twenty years ago, might not shed much light on the actor's propensities for violence today. The evidence in this case, however, was offered to show why defendant had such great apprehension for Vigil's safety and his own safety. The idea that a person would cut ears from bodies and wear them around his neck has such an impact that it is unlikely the fact it occurred some time ago would diminish its effect on one's state of mind. This specific conduct was not an ordinary criminal conviction, but was a remarkable indicator of defendant's view of Romero's propensity for violence. The focus is not on whether Romero actually committed the act, but on whether defendant believed he did. Offered to prove Romero was the aggressor, the evidence of fifteen- to twenty-year-old conduct was not too reliable. Offered to prove defendant's belief regarding Romero's willingness to use a knife on Vigil, however, the passage of time since the alleged conduct did not have much effect on the reliability of the evidence.

 The state argues the prejudicial effect of this evidence outweighs its probative value, and exclusion was therefore proper. *See* SCRA 1986 11–403. Again, we point out that this argument does not appear to apply to the pure reputation testimony. The statement that Romero's reputation for violence is "bad" has little prejudicial effect. In addition, because the issue regarding the conduct in Vietnam is not whether the conduct occurred, but the effect of the information on defendant, this case is unusual. Testimony that Romero cut off people's ears is quite prejudicial, but the very gruesomeness of the informa-

tion establishes the great impact it could have had on defendant's state of mind during the shooting incident. Therefore, the probative value of the testimony is high. To exclude evidence because of its prejudicial effect, that effect must substantially outweigh its probative value. Rule 11–403. We do not believe exclusion was warranted on this basis. *Cf. State v. Hogervorst,* 90 N.M. 580, 566 P.2d 828 (Ct.App.1977) (fact that competent evidence prejudices a party is not grounds for exclusion; question is whether probative value is substantially outweighed by prejudicial effect).

## CONCLUSION

Therefore, we believe that the reputation evidence and the Vietnam conduct evidence was of such importance to defendant's defense that the exclusion of such evidence was an abuse of discretion. We also disagree with the dissent that the district judge did not exercise his discretion in ruling on the evidentiary question. The judge ruled on the objection, heard the offer of proof, and then reiterated his ruling that the reputation evidence should not be admitted. We see no point in remanding to allow the judge to rule upon an issue that has already been ruled upon. Based on the foregoing, we reverse the trial court and remand for a new trial.

IT IS SO ORDERED.

ALARID, C.J., concurs.

BIVINS, J., concurs in part, dissents in part and files an opinion.

BIVINS, Judge (concurring in part, dissenting in part).

I agree with the majority that the district court erred in excluding the proffered testimony on hearsay grounds. I further agree that, under the circumstances of this case, it would be inappropriate for this court to affirm, as requested by the state, under the "right for any reason" doctrine. Unlike the majority, however, I think it also would be inappropriate for this court to hold the evidence admissible as a matter of law,

thereby depriving the district court of the power to exercise its discretion as to whether to admit or exclude that evidence. Thus, in lieu of reversing and remanding for a new trial, as ordered by the majority, I would conditionally affirm and remand to allow the district court to exercise its discretion.

On direct examination, counsel asked defendant if he was familiar with people who knew Sam Romero. Defendant responded that he was, indicating that "he had friends that had worked for Romero and also a brother who knew him." When asked what he had heard these people say about Romero, the state objected on the ground of improper character assassination without proper foundation, indicating that the defense would have to call witnesses to testify as to what they knew about Romero rather than to allow defendant to repeat what he had heard. In response to that objection, defense counsel advised the court that he wanted to offer testimony that defendant "had heard that Mr. Romero was a man not to be trifled with." Counsel indicated defendant had heard that Romero had threatened to shoot young men who were dating his daughters, and that he had also heard that Romero bragged about certain incidents in Vietnam, such as "carrying the ears of people around his neck." The district court ruled that "without those other parties, this is strictly a hearsay allegation," and sustained the objection. Defendant then requested and was granted leave to make a tender of proof.

Outside the presence of the jury, defendant testified that he had talked to people in the community who knew Sam Romero. When asked if Romero's reputation for violence was good or bad, defendant responded "Well, it's sort of bad I would say." When asked to explain his answer, defendant related hearing "[t]hings like when he was in Vietnam, that's [sic] he's [sic] cut people's ears off and wore [sic] them around his neck." He also related hearing from this same friend that "if they ever

messed around that he (Romero) had a bullet for them and anybody else." When asked who "they" were, defendant indicated he meant his "friend and his brothers and anybody else I guess that would be involved, I guess." Where character evidence is offered to establish a defendant's reasonable apprehension of danger, defendant must show that he knew of the reputation or conduct at the time of the incident. *State v. Ewing*, 97 N.M. 235, 237, 638 P.2d 1080, 1082 (1982).

I find nothing in the tender itself that defendant was aware of Romero's reputation for violence or the alleged Vietnam incident prior to the time of the shooting. While it may be that defendant had been aware of Romero's reputation before he went over to Romero's house, I find it impossible to infer that from the tender of proof. The majority relies on a statement made by defense counsel in response to the state's objection. Apparently referring to the threats to young men dating Romero's daughters and the Vietnam incident, counsel did indicate that defendant did have Romero's reputation in mind, and that "I'm trying to show that he had some reason for reacting with the force that he reacted with." This was not a part of a tender because the district court had not ruled at that point. It was after the court ruled that defendant requested and was granted leave to make his tender of proof. Defense counsel did not include any testimony from defendant regarding prior knowledge of Romero's reputation in the tender. *See* SCRA 1986, 11–103(A)(2).

Even if we could consider defense counsel's earlier statement to the court, made prior to the tender, the majority's reliance on that statement becomes less certain when one reviews the cross-examination by the state following the tender of proof. Referring to testimony defendant gave at a prior proceeding, the following exchange took place between the prosecutor and defendant:

Q. Do you recall at that time you were asked:

"Question: Did you know Mr. Romero prior to that? Had you ever met him prior to that day?"

A. Talking about the day of the incident.

Q. Your answer:

"Answer: Well, I had met him just once.

"Question: Did you know him"

"Answer: No."

Q. But the time when you testified before, you said you didn't know the man; is that correct?

A. Yes, sir.

The above exchange points out the danger of a reviewing court usurping the authority of the district court to exercise its discretion. Appellate review is myopic at best. We do not always review the entire record of a trial and even if we did, it is virtually impossible to gain the insight of a trial judge who presides over the case from beginning to end. The reviewing court may only be required to look at a limited portion of the record in order to resolve an issue presented, such as the evidentiary question raised in this appeal. When that review focuses only on the dialogue relating to the question presented, we may fail to note other testimony, as demonstrated above, which bears upon the district court's exercise of discretion.

Moreover, it is not altogether clear that an episode that occurred some twenty years earlier during wartime necessarily requires a ruling as a matter of law that such testimony has to be admitted so as to deprive the district court of its right to exclude evidence in the exercise of its discretion. Even if defendant heard about the Vietnam incident prior to the day of the shooting, the district court might consider it too remote in time, and the circumstances so different, that exclusion could not be said to constitute an abuse of discretion. After all, the district court, having heard all of the testimony, was certainly aware that it was defendant who went to Romero's house armed with the weapon; not the reverse.

My primary objection to reversal for a new trial, as opposed to remand, centers on what I consider to be dangerous precedent: A reviewing court taking away from a trial court the right to exercise its discretion. After all, it is the exercise of that discretion by the trial court that we review. If we indulge in the exercise of discretion for the trial court, then review is lost. I would conditionally affirm and remand so the district court could exercise its discretion in ruling on the evidentiary question. If the court decides the evidence should have been admitted, a new trial should be granted; if not, the judgment should be affirmed.