845 P.2d 762

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Anthony Ray BACA, Defendant–Appellant.**

**No. 19366.**

Supreme Court of New Mexico.

Aug. 31, 1992.

Sammy J. Quintana, Chief Public Defender, Sheila Lewis, Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

FROST, Justice.

The State alleged that on June 22, 1989, Anthony Ray Baca and Robert Gutierrez murdered their fellow inmate Luis Valasquez. The State's witnesses testified that Baca and Gutierrez waited for Valasquez in a corridor near the control room at the Penitentiary of New Mexico in Santa Fe. Correctional officers testified that they heard the sound of people running and saw Baca hit Valasquez with a shank (a crude jail-made knife) and saw Gutierrez kick Valasquez. Valasquez died from the wounds inflicted by Baca.

The jury acquitted Gutierrez of all charges but convicted Baca of murder in the first degree and possession of a deadly weapon by a prisoner. Baca received a life sentence for the murder conviction and a nine-year sentence for the possession conviction. Baca appeals these convictions directly to this Court pursuant to SCRA 1986, 12–102(A)(2) (Repl.Pamp.1992). He raises two issues in this appeal: 1) whether the trial court abused its discretion in refusing to admit specific instances of Valasquez' prior violent conduct; and, 2) whether the trial court committed error in refusing to instruct the jury on the defense of duress to the charge of possession of a deadly weapon by a prisoner. We answer both questions in the negative and affirm Baca's convictions.

### I.

Baca contends the trial court abused its discretion in excluding the proffered testimony of Gutierrez and Baca describing specific instances of Valasquez' prior violent conduct. As evidenced by an offer of proof, Gutierrez would have testified that: 1) he knew Valasquez was serving a life sentence for murder, 2) Valasquez had bragged to Gutierrez about fatally stabbing a sleeping Colorado cell-mate, and 3) Valasquez had shown him a knife with the name of an inmate he intended to kill written on the tape wrapped around the knife. Baca joined in Gutierrez' testimony and then made his own offer of proof. Baca

stated that he knew Valasquez was serving life in prison for murder and therefore had nothing to lose. He also stated that he had seen Valasquez coming out of disciplinary segregation many times for what he believed to be possession of a shank. Finally, Baca would have testified to hearing that Valasquez had killed his cell-mate in Colorado. At that point, Baca declared his intent to claim self-defense to the murder charge.

■ There are three elements to a self-defense claim. *State v. Gallegos,* 104 N.M. 247, 249, 719 P.2d 1268, 1270 (Ct.App.1986). First, there must have been the appearance to the defendant of immediate danger of death or great bodily harm. Second, the defendant must have been put in fear by the apparent danger of death or great bodily harm and must have killed the victim because of that fear. Third, the defendant must have acted as a reasonable person would have acted in the same circumstances. *Id.* At the close of the offers of proof, notwithstanding the claim of self-defense, the trial court refused to admit the specific instances of Valasquez' prior violent conduct described by Gutierrez and Baca.

■ In general, a person's character is not admissible for the purpose of proving his conformity therewith on a particular occasion. SCRA 1986, 11–404. One exception, however, is that the accused may offer evidence of a pertinent trait of character of the victim. SCRA 1986, 11–404(A)(2). If the court determines that a particular trait of the victim's character would be pertinent to the defense of the accused, the next step is to determine the kind of evidence that may be used to prove that character trait. In cases where the pertinent character trait of the victim goes toward proving an essential element of the defense, proof may be made of specific instances of the victim's conduct. *See* SCRA 1986, 11–405(B); *State v. Bazan,* 90 N.M. 209, 214, 561 P.2d 482, 487 (Ct.App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). The trial court retains the discretion to exclude specific instances of the victim's conduct if the evidence is substan-

tially more confusing, cumulative, or prejudicial than probative. SCRA 1986, 11–403; *State v. Ewing,* 97 N.M. 235, 237, 638 P.2d 1080, 1082 (1982).

Baca claims the trial court abused its discretion when it excluded specific instances of Valasquez' prior violent conduct. This Court established in 1923 that specific instances of the victim's conduct may be admitted when the defendant claims self-defense and when those instances would reflect on either whether the defendant was reasonable in his apprehension of the victim or on who was the first aggressor. *State v. Ardoin,* 28 N.M. 641, 643, 216 P. 1048, 1048–49 (1923); *see also State v. Melendez,* 97 N.M. 740, 742, 643 P.2d 609, 611 (Ct.App.1981), *rev'd on other grounds,* 97 N.M. 738, 643 P.2d 607 (1982). However, in *Ardoin* this Court counseled the trial courts to use reasonable discretion to exclude specific instances of the victim's conduct that would confuse more than assist the jury, or be merely cumulative. *Ardoin,* 28 N.M. at 644–45, 216 P. at 1049. In fact, this Court decided that it would be unwise to develop a hard and fast rule as to admissibility because the facts and circumstances of each case in this area are as important to the determination of admissibility as is the rule. *Id.* at 646, 216 P. at 1050.

■ Another hurdle to the admissibility of specific instances of the victim's conduct, and a point of some confusion, is the requirement that, for the purpose of proving the reasonableness of the defendant's apprehension, the defendant knew about the specific instances of the victim's conduct. *Ewing,* 97 N.M. at 237, 638 P.2d at 1082; *State v. McCarter,* 93 N.M. 708, 712, 604 P.2d 1242, 1246 (1980). This is a logical requirement in that if the defendant had no knowledge of the victim's violent conduct it could not very well have been a basis for his apprehension. If, however, the conduct is offered to show that the victim was the first aggressor, the defendant's knowledge of the victim's violent conduct is irrelevant and does not need to be shown. *See Ardoin,* 28 N.M. at 643, 216 P. at 1048–49; *State v. Alderette,* 86

N.M. 600, 605, 526 P.2d 194, 199 (Ct.App.), *cert. denied,* 86 N.M. 593, 526 P.2d 187 (1974); *Perrin v. Anderson,* 784 F.2d 1040, 1045 (10th Cir.1986); *United States v. Burks,* 470 F.2d 432, 437 (D.C.Cir.1972); *State v. Miranda,* 405 A.2d 622, 625 (Conn. 1978); *State v. Basque,* 66 Haw. 510, 666 P.2d 599, 602 (1983); *People v. Lynch,* 104 Ill.2d 194, 83 Ill.Dec. 598, 600, 470 N.E.2d 1018, 1020 (1984); *Commonwealth v. Beck,* 485 Pa. 475, 402 A.2d 1371, 1373 (1979); *State v. Furlough,* 797 S.W.2d 631, 649 (Tenn.Crim.App.1990); *Thompson v. State,* 659 S.W.2d 649, 654 (Tex.Crim.App.1983). Recent New Mexico cases have not made this important distinction, and we take the opportunity to do so now. *See State v. Gonzales,* 110 N.M. 166, 168, 793 P.2d 848, 850 (1990); *Ewing,* 97 N.M. at 237, 638 P.2d at 1082; *McCarter,* 93 N.M. at 712, 604 P.2d at 1246; *Melendez,* 97 N.M. at 742–43, 643 P.2d at 611–12; *State v. Lopez,* 105 N.M. 538, 547, 734 P.2d 778, 787 (Ct. App.1986), *cert. quashed,* 105 N.M. 521, 734 P.2d 761, *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). Having so ruled, we specifically make the point that we agree with the guidance enunciated by the Connecticut Supreme Court urging trial courts to use the proper discretion before admitting specific instances of the victim's violent conduct.

> We emphasize that the accused is not permitted to introduce the deceased's entire criminal record into evidence in an effort to disparage his general character; only specific convictions for violent acts are admissible. Nor is the accused authorized to introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression.

*Miranda,* 405 A.2d at 625 (citations omitted).

■ In this case, Baca offered specific instances of Valasquez' violent conduct that he knew of, and specific instances of which he had no knowledge (the specific instances Gutierrez would have offered into evidence). He offered this evidence both to show that his apprehension of Valasquez was reasonable and to show that Valasquez was the first aggressor. Under these circumstances, the evidence of specific instances known and unknown to Baca could have been admitted into evidence, subject as always to the trial court's discretion under Rule 11–403.

■ Because the trial court does have a significant amount of discretion in determining admissibility in this area, an abuse of discretion may be found only if the exclusion of the evidence precluded the criminal defendant from proving an element of his defense. *Gallegos,* 104 N.M. at 253–54, 719 P.2d at 1274–75; *State v. Salgado,* 112 N.M. 793, 797, 819 P.2d 1351, 1355 (Ct.App.1991). In *Gallegos* and *Salgado,* both relied upon by Baca, the appellate court properly found an abuse of discretion under the specific facts and circumstances surrounding those cases. In *Salgado,* a self-defense homicide case, the appellate court found that the trial court "prevented defendant from developing a major part of his defense" when it excluded the defendant's proffered testimony that the victim bragged about wearing a chain of people's ears around his neck in Vietnam. *Salgado,* 112 N.M. at 797, 819 P.2d at 1355. The court concluded that this evidence would have been necessary to the jury for it to have made a meaningful determination as to whether the defendant's apprehension of the victim was reasonable, and as to why the defendant brought a gun with him to meet the victim. *Id.*

In *Gallegos,* the facts and circumstances were just as important to the determination that the trial court abused its discretion. In that case, the defendant was the deceased's battered wife. The trial court refused her requested self-defense instruction. The Court of Appeals held that the trial court abused its discretion in refusing to give the self-defense instruction and in refusing to allow specific instances of the victim's conduct. The Court of Appeals held:

> In issues of self-defense, the victim's character constitutes an element of the defense which properly can be proven by

specific instances of conduct. When the trial court precludes defendant from proving an element of her defense, the court abuses its discretion.

*Gallegos,* 104 N.M. at 253–54, 719 P.2d at 1274–75 (citations omitted). In *Gallegos,* the evidence was particularly relevant to the defendant's self-defense claim because the specific instances of the victim's violent conduct were directed at the defendant personally. Again, this evidence would have been necessary to the jury for it to have made a meaningful determination as to whether the defendant's apprehension was reasonable and as to who was the first aggressor. Under these circumstances, an exclusion of the victim's specific instances of prior violent conduct would preclude the defendant from proving an element of her defense, and would therefore constitute an abuse of discretion.

Here, however, Baca was not precluded from proving an element of his defense. To the contrary, the trial court could very well have excluded the evidence based on its relative lack of probative value and its cumulative nature. *See* SCRA 1986, 11–403; *State v. Lovato,* 91 N.M. 712, 715, 580 P.2d 138, 141 (Ct.App.), *cert. denied,* 91 N.M. 751, 580 P.2d 972 (1978). The relevant inquiry for determining whether error has occurred "is whether the additional evidence of [the victim's] violent character might have materially affected the verdict." *Trujillo v. Sullivan,* 815 F.2d 597, 613 (10th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987). We do not believe that it would have. There was ample evidence admitted to support Baca's contention that his fear of Valasquez was reasonable and that Valasquez was the first aggressor. Specifically, both Baca and Gutierrez testified that Valasquez had a reputation in the prison community for being particularly violent. Gutierrez further testified that his opinion was based upon specific things Valasquez had told him and upon conversations he had with other inmates about Valasquez. In addition, the trial court allowed a correctional officer to testify that Valasquez was a "stone cold killer," and another inmate testified that Valasquez was violent and

preyed on the weak. Under these circumstances, the specific instances from Valasquez' background would have been cumulative and as such would not have affected the verdict. For these reasons, the trial court did not abuse its discretion in excluding the proffered specific instances of Valasquez' prior violent conduct.

## II.

Baca was convicted of possession of a deadly weapon by a prisoner. The statute provides:

> Possession of deadly weapon or explosive by prisoner in lawful custody consists of any inmate of a penal institution, reformatory, jail or prison farm or ranch possessing any deadly weapon or explosive substance.

> Whoever commits possession of deadly weapon or explosive by prisoner is guilty of a second degree felony.

NMSA 1978, § 30–22–16 (Cum.Supp.1992). Baca contends that the trial court erred in refusing to instruct the jury on the defense of duress to this charge. We disagree.

We held in *Esquibel v. State,* 91 N.M. 498, 501, 576 P.2d 1129, 1132 (1978), that the right to present a duress defense is available for any crime except homicide or a crime requiring the specific intent to kill. Thus, the defense of duress is available for the crime of possession of a deadly weapon by a prisoner.

The next question is whether the evidence Baca presented on duress warranted a jury instruction. A defendant must make a prima facie showing of duress to warrant submission of the defense to the jury. *State v. Castrillo,* 112 N.M. 766, 769, 819 P.2d 1324, 1327 (1991). He must show that he was in fear of immediate and great bodily harm and that a reasonable person in his position would have acted the same way under the circumstances. *Id.; Esquibel,* 91 N.M. at 500, 576 P.2d at 1131; *see also* SCRA 1986, 14–5130. If the evidence supports a theory of the case, the defendant is entitled to an instruction on that theory. *Castrillo,* 112 N.M. at 769,

819 P.2d at 1327; *State v. Venegas*, 96 N.M. 61, 62, 628 P.2d 306, 307 (1981).

Baca testified that on June 20, 1989, Valasquez confronted him about a bottle of vitamins that he suspected Baca had taken. Baca had actually taken the vitamins, but he denied this to Valasquez. During the confrontation, Valasquez kept his hand in his pocket. From this gesture, Baca inferred that Valasquez had a shank in that pocket and that Valasquez was threatening his life. A correctional officer approached at that moment, and Baca and Valasquez parted. Two days later, on the morning of June 22, Baca armed himself with a shank and used it later that morning to stab Valasquez. We conclude that this evidence did not support a theory of duress.

The jury convicted Baca of a crime closely approaching a strict liability crime in New Mexico, the possession of a deadly weapon by a prisoner. A California appellate court noted that: "The purpose of these statutes is to protect inmates and officers from assaults with dangerous weapons perpetrated by armed prisoners. Evil intent or intended use for an improper purpose is not an element of the crime." *People v. Velasquez*, 158 Cal.App.3d 418, 204 Cal.Rptr. 640, 641 (1984). The defense of duress must be construed differently in the context of a near strict liability crime such as this one. *Castrillo*, 112 N.M. at 771, 819 P.2d at 1329. Specifically, the elements of immediacy and reasonableness must be construed narrowly so that the high level of protection afforded by a statute approaching strict liability is not vitiated.

For policy reasons, many states have implemented the general rule that duress is not available to the charge of possession of a deadly weapon by a prisoner. In *People v. Rau*, 436 N.W.2d 409 (Mich.Ct.App. 1989), the Michigan Court of Appeals reasoned against the duress defense for prisoners found with weapons:

On public policy grounds, we cannot sanction the possession of deadly weapons by inmates. To do so would invite an unwarranted threat to the safety of prison personnel and other inmates. In a prison setting there would be virtually no control over such weapons. To allow such would be to leave the door wide open for possession of life-threatening objects with later fabrication of the defense. The recent deaths of prison guards adequately demonstrate the folly of this approach.

*Id.* at 411. Many other jurisdictions have expressed these same concerns. A California appeals court, for example, said that "[a] jail in which the prisoners could assert a court approved 'right' to possess deadly weapons for protection would be impossible to administer humanely and safely." *Velasquez*, 204 Cal.Rptr. at 643.

Many of the jurisdictions following the general rule that duress is unavailable as a defense to possession of a deadly weapon by a prisoner have carved out an extremely narrow exception. The most common scenario warranting application of this exception is the situation in which an unarmed prisoner is attacked by an armed prisoner and the unarmed prisoner temporarily uses the other prisoner's weapon in self-defense. *Mungin v. State*, 458 So.2d 293 (Fla.Dist. Ct.App.1984), *cert. denied*, 464 So.2d 556 (1985); *State v. Vandiver*, 757 S.W.2d 308 (Mo.Ct.App.1988). In this limited situation, a defense of duress is available to the prisoner who obtains a deadly weapon at the moment when he is attacked and fears imminent threat of death or serious bodily injury.

We do not believe that a wholesale rejection of the duress defense, tempered with a narrow exception, is necessary. Federal case law on a similar issue, the application of the defense of duress to the charge of felon in possession of a firearm, allows the general duress defense to function without vitiating the protectionary purpose of the strict liability statute. To accomplish this, the defendant must produce sufficient evidence that: (1) he was under an unlawful and imminent threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation that would likely compel him to engage in the criminal conduct; (3) he did not have a reasonable legal alternative (in other

words, he could not have reasonably avoided the threatened harm or the criminal conduct in which he engaged); and (4) a direct causal relationship existed between the criminal action and the avoidance of the threatened harm. *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir.1989); *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

We agree with the federal courts that "the keystone of the analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law." *Singleton*, 902 F.2d at 473. We adopt these guidelines for determining when duress may be asserted as a defense to the charge of possession of a deadly weapon by a prisoner. These guidelines define and narrow the immediacy and reasonableness requirements so that the purpose of the near strict liability statute of protecting the inmates and prison personnel will be effectuated. We are not abolishing the availability of the defense, but merely taking into account "the nature of the crime, the evil the crime is designed to prevent, and the nature of the defense." *Castrillo*, 112 N.M. at 773, 819 P.2d at 1331. We believe that this approach is consistent with, and a logical extension of *Castrillo*.

In *Castrillo*, the defendant was charged with the crime of felon in possession of a firearm. A series of events over a span of months led the defendant to purchase the gun. First, the defendant's estranged wife willfully smashed his car windshield. Later, she fired a gun and shouted obscenities in his vicinity. During this same period, the defendant's car was shot up while he was visiting his wife. The tension finally resulted in an exchange of gunfire between the defendant and his wife and her family. The trial court denied the defendant a duress instruction and he was convicted of the crime of felon in possession of a firearm. He appealed the denial of the duress instruction. We affirmed the conviction reasoning that:

A person, operating under some psychological coercion and faced with a panoply of choices including legal and illegal alternatives, cannot opt for the unlawful alternative if legal avenues to relief are available....

... The obvious response to threatened violence—especially a nebulous, potential, future violence—is not to resort to possession of a weapon.

*Castrillo*, 112 N.M. at 772, 819 P.2d at 1330. In *Castrillo*, we noted that the defendant could have called the police or avoided his estranged wife and her family. It was unreasonable for the defendant to choose the illegal alternative of possession of a firearm.

Likewise, it was patently unreasonable for Baca to choose the illegal alternative of possessing a shank. As a prisoner in a penitentiary, Baca most certainly knew that possession of a deadly weapon by a prisoner was illegal. After the confrontation with Valasquez over the vitamins, Baca should have informed a guard of the potential threat and/or requested appropriate security arrangements. Baca should have exhausted all legal alternatives before illegally possessing a deadly weapon. Because Baca failed to show that he exhausted all legal alternatives to his possession of the shank, he failed to make a prima facie showing that he acted as a reasonable person under the circumstances would have acted. Thus, the trial court correctly denied Baca's request for an instruction on duress. Accordingly, we affirm his conviction for possession of a deadly weapon by a prisoner.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.