**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD R. POWERS,

　　　　Petitioner - Appellant,

　　v.

JOHN SHANKS, Warden,

　　　　Respondent - Appellee.

No. 97-2279
(D. Ct. No. CIV-92-1076-JP)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **TACHA**, and **EBEL**, Circuit Judges.

　　Petitioner-Appellant Donald R. Powers appeals from the district court's order denying his petition for a writ of habeas corpus, filed in accordance with 28 U.S.C. § 2254.  We grant petitioner's request for a certificate of probable cause and exercise jurisdiction pursuant to 28 U.S.C. § 2253.  For the reasons set forth below, we affirm.

**Background**

　　On June 12, 1987, petitioner was charged in a five-count indictment with

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the murder of Cleon Richards, a firearm enhancement, robbery, arson, and tampering with evidence. The District Court of Valencia County New Mexico appointed counsel to represent petitioner. During his week-long jury trial, petitioner attempted to demonstrate that he killed Richards in self-defense. According to petitioner, he went to Cleon Richards' house to pay him a visit. He had a short conversation with Richards, left the house, and returned later that evening to collect some money Richards owed him. Powers had previously done some work for Richards, who was confined to a wheelchair. When Powers returned, Richards was intoxicated. The two talked for a while, but when Powers mentioned the debt, Richards "went off" and shot at him with a gun Richards kept in his belt. Petitioner struck Richards in the head with a glass bottle and attempted to wrestle the gun from his hands. Just when Powers thought he had control of the gun, but with Richards' hands still on the weapon, it fired, killing Richards.

On January 10, 1989, the jury found Powers guilty of second degree murder and robbery. It acquitted him of the other charges. The trial court entered judgment in accordance with the jury's verdict and sentenced petitioner to fourteen years imprisonment, but suspended two years of the sentence. Petitioner's convictions were upheld on appeal. See State v. Powers, 800 P.2d 1067, 1070 (N.M. Ct. App. 1990), cert. denied, 801 P.2d 86 (N.M. 1990).

On October 15, 1990, Powers sought post-conviction relief before the New Mexico Supreme Court, claiming ineffective assistance of counsel. The New Mexico Supreme Court summarily denied his petition. On November 26, 1991, Powers returned to the state district court to seek post-conviction relief, reasserting his ineffective assistance of counsel claim. The court held an evidentiary hearing but denied his petition on April 28, 1992, without making factual findings. The New Mexico Supreme Court subsequently denied certiorari.

On September 30, 1992, Powers filed a petition for a writ of habeas corpus in the United States District Court for the District of New Mexico, again claiming ineffective assistance of counsel. The matter was referred to a magistrate judge, and, after several reassignments, a bifurcated evidentiary hearing was held on August 27, 1996, and September 24, 1996. On February 12, 1997, the magistrate recommended the denial of Powers' petition. Petitioner filed timely objections to the magistrate's recommendation. The district court declined to adopt the magistrate's recommendation, directing him instead to reconsider certain findings regarding the admissibility of specific acts evidence. On June 25, 1997, the magistrate issued his additional proposed findings and again recommended denial of Powers' petition. The district court adopted the magistrate's recommendations on July 15, 1997, and dismissed Powers' petition for a writ of habeas corpus with prejudice. This appeal followed.

## **Discussion**

Petitioner argues that his second degree murder and robbery convictions cannot stand because he was denied the right to effective assistance of counsel during his trial. "A claim of ineffective assistance of counsel presents a mixed question of law and fact which we review de novo." Brewer v. Reynolds, 51 F.3d 1519, 1523 (10th Cir. 1995). However, the underlying facts adjudicated in the state court are "presumed to be correct" unless they are not fairly supported in the record. See 28 U.S.C. § 2254(e)(1); Cummings v. Evans, 161 F.3d 610, 614 (10th Cir. 1998), petition for cert. filed, -- U.S.L.W. -- (U.S. Feb. 1, 1999) (No. 98-7890).

To prevail on a claim of ineffective assistance of counsel, petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must establish that his counsel's performance "fell below an objective standard of reasonableness." Id. at 688. To meet this first prong of the Strickland test, "petitioner must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998) (quoting Strickland, 466 U.S. at 689); see also Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998). When analyzing the performance of petitioner's counsel, we focus on "not what is prudent or appropriate, but only

what is constitutionally compelled." United States v. Chronic, 466 U.S. 648, 665 n.38 (1984).  Additionally, we view petitioner's claim of ineffective assistance of counsel "from the perspective of his counsel at the time he rendered his legal services, not in hindsight."  Hickman, 160 F.3d at 1273; accord Strickland, 466 U.S. at 689.  The second prong of the Strickland test requires petitioner to show that his counsel's deficient performance prejudiced his defense.  See 466 U.S. at 692.  To satisfy this second prong, petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

## I.  Reasonableness of Trial Counsel's Performance

Petitioner identifies several alleged deficiencies with his trial counsel's performance, all of which relate to his claim of self-defense.  First, petitioner asserts that his trial counsel failed to adequately impeach an important witness for the prosecution, Fire Chief Cherry.  Second, he argues that his trial counsel's inadequate knowledge of New Mexico evidence law resulted in a failure to introduce evidence of the defendant's character that would have supported Powers' claim of self-defense.  Third, petitioner claims that his trial counsel called a witness who was not qualified to give expert testimony that would have advanced his claim of self-defense.

### A.  Failure to Fully Impeach Prosecution Witness

Petitioner contends that his trial counsel rendered ineffective assistance by failing to fully impeach a key prosecution witness. We disagree.

During the prosecution's case-in-chief, Fire Chief John Cherry testified that when he arrived at the decedent's burning house, the sliding glass door opening into the room where the decedent's body was later found was closed and intact. He also testified that, in his opinion, the heat of the fire and the cold water used to extinguish it caused a contraction of the glass in the sliding door which broke one of the panels. This testimony was inconsistent with Cherry's previous grand jury testimony, in which he stated that the sliding glass door had been cracked when he arrived. Whether the door was cracked was an important issue to petitioner's case because it corroborated his testimony that the victim's gun had been shot twice and that one bullet went through the sliding glass door. Nonetheless, the petitioner's trial counsel did not attempt to impeach Cherry regarding the cracked door during the prosecution's case. Rather, he waited until the prosecution had rested and recalled Cherry at the beginning of the petitioner's case-in-chief.[1] At that time, petitioner's counsel examined Cherry regarding his testimony that the door was not cracked and confronted him with his prior

---

[1] We note that the timing of Fire Chief Cherry's impeachment is soundly within the realm of trial strategy, and we see no reason to second-guess that tactical decision. See United States v. Miller, 907 F.2d 994, 1002 (10th Cir. 1990) (noting that a decision on cross-examination may be a part of trial counsel's overall strategy).

inconsistent grand jury testimony. Powers' counsel read Cherry's grand jury testimony before the jury and successfully got Cherry to admit that the door could have been cracked when he arrived and that he could not eliminate the possibility that the door was cracked by a gunshot. While defense counsel's impeachment of Fire Chief Cherry was not done in a text book manner, it was sufficient to call Cherry's testimony into doubt before the jury. We find counsel's performance in this regard was not constitutionally deficient.

## B. Failure to Introduce Character Evidence in Support of Self-Defense Claim

During petitioner's trial, his counsel attempted to elicit from Fenton Richard, the decedent's son, testimony recounting various specific prior acts of his father's violent conduct. The prosecution objected to the admission of such evidence on the grounds that the defense had failed to lay a proper foundation. New Mexico law allows admission of character evidence of the victim of a crime, see N.M.R. Evid. 11-404(A)(2), but a defendant may prove character traits by specific acts of the victim's conduct only when the character is an essential element of a charge or defense, see N.M.R. Evid. 11-405(B). Since apprehension is an essential element of self-defense,[2] a defendant may seek to prove it by

---

[2] Under New Mexico law, three elements comprise a claim of self-defense.

First, there must have been the appearance to the defendant of immediate

introducing specific acts of the victim, provided the defendant had knowledge of the specific acts at the time of the homicide.  See State v. Baca , 845 P.2d 762, 765 (N.M. 1992) ("Baca I") (citing State v. Ardoin, 216 P. 1048, 1048-49 (N.M. 1923)); State v. Ewing, 638 P.2d 1080, 1082 (N.M. 1982).[3]  Since petitioner's

> danger of death or great bodily harm.  Second, the defendant must have been put in fear by the apparent danger of death or great bodily harm and must have killed the victim because of that fear.  Third, the defendant must have acted as a reasonable person would have acted in the same circumstances.

State v. Baca, 845 P.2d 762, 765 (N.M. 1992) ("Baca I").  Thus, establishing the defendant's apprehension of the victim is an essential element of a claim of self-defense under New Mexico law.

[3] There is also some question as to whether petitioner could have introduced the specific acts evidence to show that Richards' was the first aggressor.  At the time of petitioner's trial, it was unclear if New Mexico law allowed evidence of specific acts of the victim's prior conduct to be offered for the separate purpose of establishing that the victim was the initial aggressor without showing that the defendant knew of the specific acts.  Earlier case law suggests that such evidence was admissible for this purpose.  See Ardoin, 216 P. at 1048-49; Trujillo v. Sullivan, 815 F.2d 597, 612 n.8 (10th Cir. 1987) (noting the uncertainty in New Mexico law at the time).  More recent cases, issued after the petitioner's trial, appear inconsistent.  In Baca I, the New Mexico Supreme Court stated that "specific instances of the victim's conduct may be admitted when the defendant claims self-defense and when those instances would reflect on either whether the defendant was reasonable in his apprehension . . . or on who was the first aggressor." 845 P.2d at 765.  It further noted that "[i]f . . . the conduct is offered to show that the victim was the first aggressor, the defendant's knowledge of the victim's violent conduct is irrelevant and does not need to be shown." Id.  However, the New Mexico Court of Appeals, in State v. Baca, 854 P.2d 363 (N.M. Ct. App. 1993) ("Baca II") treated  the Baca I language on first aggressor as dicta and held that specific instances of conduct are not admissible to show that the victim was the first aggressor.  See id. at 367.  In light of our finding that Richards' prior violent acts were possibly admissible in some fashion to support petitioner's claim of self-defense, we need not resolve this point of New Mexico law.

trial counsel had not yet established that Powers knew of the specific acts, the trial court correctly sustained the prosecution's objection. At the time the court made its evidentiary ruling, it also specifically informed petitioner's counsel that after he had established Powers' knowledge of the decedent's prior acts of violence, he could recall Fenton Richards to testify regarding the specific acts. Powers' counsel failed to question him regarding his knowledge of the victim's prior violent acts.

Because petitioner's counsel did not lay a proper foundation, he could not, and, in fact, did not offer any specific acts evidence regarding Richards' violent disposition. However, several pieces of specific acts evidence may have been admissible had a proper foundation been laid, including: (1) the testimony of Valencia County Sheriff's officers, who had responded to calls arising from the victim's drinking and firing his gun in his house; (2) the testimony of Lauri Jorgenson that she heard the victim threaten Powers; (3) the testimony of John Mitchell, who allegedly heard the victim threaten to shoot Powers; (4) the testimony of a former housekeeper that the victim had threatened to shoot her; (5) the testimony of Fenton Richards that his father was violent when drunk and had attacked his bedroom door with a knife; (6) the testimony of Renee Richards that she left her husband after he shot one of her dogs; (7) the testimony of petitioner that the victim had bragged to him about being able to kill someone and get away

with it, and that the victim had told him that the Albuquerque Police Department fired him for an act of violence against an arrestee. This evidence may have been admissible to establish Powers' fear of the victim. Of course, the trial court would have had discretion on whether to admit such testimony, taking into account its probative value and its potential to confuse or mislead the jury. See Baca I, 845 P.2d at 765; Ewing, 638 P.2d at 1082. Nevertheless, a reasonably competent attorney would have known the New Mexico evidence rules and attempted to introduce this character evidence. Such information fits logically into petitioner's self-defense theory in this case. Moreover, a competent attorney also would have known that he could have offered opinion or reputation testimony to prove the victim's character. See N.M.R. Evid. 11-405(A). The record shows that Fenton Richards perhaps could have offered such testimony.

Petitioner claims that he knew all of the above information about Richards at the time he killed him, and the parties do not dispute this fact. We therefore hold that his counsel erred in not proffering this evidence. We find that counsel's failure to acquaint himself with New Mexico evidence law and his failure to proffer the character evidence under the circumstances of this case supports a finding that petitioner's counsel was deficient under the first prong of Strickland.

## C. Failure to Qualify Witness to Give Expert Testimony in Support of Defense

Finally, petitioner supports his claim of ineffective assistance by asserting that his trial counsel was deficient in calling a proposed "expert" witness who was not qualified to give expert testimony and who the trial court precluded from testifying. At trial, the defense called as its last witness Robert Romero, a retired homicide detective who had worked with the Albuquerque Police Department. Defense counsel intended to use Romero's testimony to establish that two shots were fired, one through the sliding glass door. Romero was supposed to accomplish this by testifying about the significance of the Harrison primer residue test results[4] and crime scene reconstruction. However, Romero had no experience with the Harrison primer residue test other than sending samples to the crime laboratory, and he had never even viewed the crime scene. Indeed, Romero had never testified as an expert in criminalistics. Consequently, the trial court refused to qualify Romero as an expert. Petitioner's trial attorney asked no further questions of Romero.

Because of Romero's lack of experience and unfamiliarity with the crime scene, petitioner's counsel should have known that the court would not have allowed him to give the desired expert testimony. We thus find that his performance in this regard, as well as his handling of the character evidence, "fell

---

[4] A Harrison primer residue test, under appropriate conditions, can establish whether a particular individual recently fired a gun based on the residue material that is emitted when the gun is fired.

below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.

Therefore, petitioner has met the first prong of the <u>Strickland</u> test.

## II. Prejudice

Although petitioner has met the first prong of the <u>Strickland</u> test, he cannot succeed on his claim of ineffective assistance of counsel unless he can also demonstrate that he suffered prejudice as a result of his trial counsel's errors. As noted above, to satisfy this second prong of the <u>Strickland</u> test, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "The essential question is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" <u>Newsted v. Gibson</u>, 158 F.3d 1085, 1091 (10th Cir. 1998) (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993)).

### A. Failure to Introduce Character Evidence

Powers does not show prejudice with respect to his counsel's failure to introduce character evidence showing the victim's violent disposition. Even if some of the character evidence had been introduced, we are convinced that it would not have had a reasonable probability of changing the outcome of the trial.

First, it is highly speculative whether petitioner could have produced all the evidence he claims his counsel erred in failing to offer. For example, the record

shows that petitioner wished to offer testimony by the victim's former housekeeper that Richards had threatened to shoot her. However, she had not been located by the time of the trial, nor was it clear that she could ever be located. Additionally, some of the specific acts evidence has limited probative value. For example, even if Fenton Richards had testified that his father stabbed his bedroom door, that event occurred approximately nineteen years before petitioner's trial. Likewise, even if the Phoenix Police Department dismissed the decedent for an act of violence, that event occurred approximately thirty-two years before his death. The probative value of such evidence is greatly diminished by its remoteness in time. See, e.g., Ewing v. Winans, 749 F.2d 607, 614-15 (10th Cir. 1984) (finding no abuse of discretion in trial court's decision to exclude 33 year old assault with deadly weapon conviction and 32 year old conviction for involuntary manslaughter); State v. Ewing, 638 P.2d 1080, 1082 (N.M. 1982) (same); 2 Weinstein's Federal Evidence § 401.04[2][e][ii] (Joseph McLaughlin, ed., 2d ed. 1998). We believe other possible evidence suffers similarly from concerns of speculation and remoteness. Moreover, some of the remaining specific acts evidence is based solely upon petitioner's self-serving, uncorroborated testimony of statements Cleon Richards allegedly made to him. The jury might take such statements with a suitable amount of skepticism.

Powers' own statement also undercuts some of the significance of the

character evidence at issue. When asked whether he feared for his life when Cleon Richards allegedly drew his gun on him, Powers answered: "there's no doubt. I never, up to that point, I never really considered Cleon a threat; you know, but from knowing him and stuff, when he pointed that gun at me, I sincerely thought my life was in danger." Magistrate's Additional Proposed Findings and Recommended Disposition, at 5. Thus, Powers admitted that Richards did not frighten him until Richards pulled a weapon and fired it at him. Such an event would cause most people to fear for their lives, regardless of what they knew about the victim. In this respect, the character evidence is, to some degree, cumulative. The additional character evidence may have reinforced Powers' claim that he was very afraid, but it would not have added enough to change the outcome of his trial.

The evidence of petitioner's guilt produced at trial was overwhelming. First, petitioner's theory of self-defense is plainly inconsistent with the forensic evidence adduced at trial. The record reveals that the decedent was shot straight through the left temple and the bullet exited through the right temple with no horizontal or vertical deviation. Additionally, ballistics tests revealed that the defendant was shot from a distance of approximately one foot. Such evidence is particularly damaging to the petitioner's claim of self-defense given that the petitioner testified the decedent had the gun in his right hand preceding the

alleged struggle and that multiple hands were on the gun at the time it fired. It is difficult to envision how the gun, which Powers admits was in Richards' right hand, somehow ended up one foot to the left of Richards' head and pointed directly back at Richards' temple, with Richards' hands still on it. Moreover, Richards was, by petitioner's account, falling forward and struggling as this happened. Additionally, the record indicates that Richard's body showed no signs of a struggle other than the wound inflicted from being hit in the head with the glass bottle. Thus, the forensic evidence dramatically undercuts the plausibility of petitioners' account of the events supporting his self-defense claim.

Furthermore, the record shows that after Powers killed Richards, he acted in a manner at odds with his alleged innocence. Petitioner admits that he stole the weapon which killed Richards and subsequently fled the country. When he reentered the country, petitioner had the weapon in his possession, with one, not two, empty shells in it.[5] After the weapon was recovered at the border, petitioner fled for a period of six months through Colorado, California and Arizona as a fugitive from justice, utilizing aliases to avoid capture. Finally, when plaintiff was apprehended, he told officers "I pulled the trigger and you can make

---

[5] Although the bullet found at the decedent's house could not be identified as the one that killed Richards or a match for the empty shell casing found in the recovered weapon, the record does reflect that the discovered bullet was fired from the same .38 caliber Colt revolver that was seized from Powers.

- 15 -

whatever you want to out of that." Magistrate's Proposed Findings and Recommended Disposition, at 16. These acts, taken in combination, certainly do not advance plaintiff's claim of not guilty.

Because the evidence produced at trial in support of petitioner's convictions was overwhelming, we find that the character evidence defense counsel failed to offer regarding the petitioner's apprehension of the decedent would not have affected the outcome of the proceeding. Thus, counsel's error does not support a finding of prejudice under Strickland.[6]

## B. Failure to Qualify "Expert" Witness

Finally, petitioner contends that his trial counsel's decision to call Robert Romero as a witness was prejudicial because Romero was not qualified to give

---

[6] Petitioner attempted to raise an additional issue in supplemental authority and at oral argument regarding the failure of his trial counsel to fulfill his opening statement promise to the jury regarding character evidence. Trial counsel stated to the jury that he would produce evidence that petitioner acted in self-defense in part because he was aware of Cleon Richards history of violent acts when intoxicated. Petitioner argues that the failure to fulfill this promise to the jury amounts to prejudice per se. However, we find petitioner did not properly raise this issue on appeal. In his opening brief, petitioner mentions the fact that his attorney told the jury to expect certain evidence, but petitioner did not argue that the failure to carry out this promise, by itself, constituted prejudice. In other words, petitioner never asserted in his briefs that counsel's statement was itself prejudicial, nor did he cite any authority to support such a proposition. An issue raised for the first time at oral argument "comes too late." Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 n.5 (10th Cir.) cert. denied, 118 S. Ct. 626 (1997); see also, e.g., Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (stating that an issue not adequately briefed will not be considered even though party attempts to assert the claim at oral argument).

expert testimony regarding the Harrison primer residue test and crime scene reconstruction that would have assisted petitioner's case. We find no prejudice. The prosecution admitted no evidence regarding the results of the Harrison primer residue test, making it unnecessary for the defense to call a witness to rebut the results. In any event, the residue primer test results were inconclusive, probably because soot, smoke, and water stemming from the fire that had been set at the crime scene contaminated the residue collected from the decedent's hands. It is hard to imagine that any expert testimony regarding the primer residue test results, under these circumstances, would have assisted petitioner's case. In fact, such testimony would likely have constituted pure speculation, making it inadmissable. See N.M. R. Evid. 702 (stating that admissible expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue"); see also, e.g., Mitchell v. Gencorp Inc., -- F.3d --, 1999 WL 5105, at *2 (10th Cir. Jan. 7, 1999) (noting that under Federal Rule of Evidence 702, admissible expert testimony must be based on "actual knowledge and not 'subjective belief or unsupported speculation'" (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993))). Similarly, any expert testimony regarding crime scene reconstruction would also be dubious, given that the crime scene had been destroyed by fire and rebuilt while petitioner was a fugitive from justice. Consequently, we fail to see how petitioner's trial

counsel's error in calling a witness who was not qualified to testify regarding the primer residue test results and crime scene reconstruction prejudiced his defense. Moreover, the mere fact that the jury saw defense counsel fail to get his proposed expert qualified is not enough to impact the outcome in this case.

In sum, based on our careful review of the record, including the tape recordings of the state court proceedings and the transcript of the evidentiary hearing, we find that plaintiff has failed to show that his trial counsel's unprofessional errors individually or cumulatively affected the outcome of his trial. His claim of ineffective assistance of counsel has no merit.

Although we grant petitioner's request for a certificate of probable cause, for the reasons discussed above, we AFFIRM the order of the district court denying his petition for a writ of habeas corpus.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Circuit Judge