892 P.2d 962

STATE of New Mexico,
Plaintiff–Appellee,

v.

Patrick RUIZ, Defendant–Appellant.

No. 15292.

Court of Appeals of New Mexico.

Jan. 20, 1995.

Certiorari Denied March 7, 1995.

516

Tom Udall, Atty. Gen., Ann M. Harvey, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

*OPINION*

PICKARD, Judge.

Defendant appeals his conviction for first degree child abuse (resulting in death) of his child Patrick. Defendant raises issues concerning (1) the consolidation of the child abuse charge with charges for bribery of a witness; (2) the admission of evidence of other bad acts, specifically the events surrounding the bribery and other acts of Defendant directed toward family members; (3) the exclusion of testimony of another child regarding the events occurring on the day Patrick died; (4) the sufficiency of the evidence; and (5) cumulative error. We affirm.

FACTS

Defendant was at home with Patrick, who was his son by a previous marriage; Paul Corona, who is the son of Defendant's then current wife, Della, by her previous marriage; and Devonne Ruiz, who is Defendant and Della's child by their current marriage. According to Defendant, Patrick was playing outside and had fallen. When Patrick came in from outside, he had a little blood on his lip. Defendant wiped off the blood, gave Patrick some water, and put him to bed. When Defendant checked on Patrick a few minutes later, his lips were blue and he was cold. Defendant then took Patrick to the hospital. On the way to the hospital, Defendant flagged down paramedics. Notwithstanding the efforts of the paramedics and others who arrived at the scene, Patrick was unable to be revived and was later pronounced dead.

Several experts testified that Patrick's injuries were inconsistent with an accidental fall and were consistent with child abuse. A defense expert testified to the contrary—that Patrick's injuries were consistent with having fallen or with efforts at resuscitation and inconsistent with child abuse. According to the paramedics, Defendant was standing by his vehicle with his arms crossed during their attempt to revive Patrick; Defendant provided them with information only in response to direct questions.

Based on the events on the day Patrick died, Defendant was charged with child abuse by torturing, confining, or punishing (NMSA 1978, § 30–6–1(C)(2) (Repl. Pamp.1994)) and, in the alternative, child abuse by permitting Patrick to be in a dangerous situation (§ 30–6–1(C)(1)). He was also charged with two counts of child abandonment for leaving Paul and Devonne alone when he took Patrick to the hospital. The district court directed a verdict on these two charges.

Prior to trial on the child abuse and abandonment charges, Defendant and his wife, Della, were in the office of Defendant's attorney. According to Della's first statement, she was in an inner office with the attorney talking about Defendant's past abuse of other children when Defendant, who had been listening at the door, barged in with fists raised, calling Della a liar. When this incident was investigated, it turned out that Defendant had several times earlier threatened Della that he would kill her or that she should "watch it" if she testified against him in this child abuse case. Della separated from Defendant because of the physical abuse Defendant inflicted on her surrounding his threats that she not testify against him.

Based on the events prior to the event in the attorney's office and the event in the attorney's office, Defendant was charged with two counts of bribery of a witness by intimidation or threats. The State moved to consolidate the charges, arguing that the evidence of the threats and intimidation would be admissible in any event in the child abuse case. Over Defendant's objection, the district court ordered consolidation.

During trial, the district court admitted evidence of not only (a) the threats and intimidation but also (b) the evidence Defendant was attempting to suppress by threatening Della—his prior acts of violence or abuse toward children—and (c) evidence of Defendant's prior battering of Della. The

jury found Defendant guilty of the alternative count of child abuse, that involving placing the child in a dangerous situation, but the jury was unable to agree on a verdict on the main count of child abuse or the two counts of bribery of a witness.

## CONSOLIDATION

■ We first address the issue of consolidation and, in doing so, we rely on the showing presented to the district court at the time that it ruled on the issue. When the district court ruled on the issue, the showing was that the threats and intimidation related to Defendant's attempt to intimidate Della from testifying about Defendant's behavior with other children. Defendant contends that the charges should not have been consolidated into one trial because he was prejudiced in his defense of the child abuse charges by the evidence relating to the bribery. Defendant relies on *State v. Gallegos*, 109 N.M. 55, 64, 781 P.2d 783, 792 (Ct.App.), *cert. denied*, 108 N.M. 771, 779 P.2d 549 (1989), for the proposition that severance should be ordered when prejudicial testimony, inadmissible in a separate trial, is admitted in the joint trial. We thus determine whether the evidence of the bribery would have been admissible in a trial of the child abuse charges alone.

We hold that the evidence of the threats and physical intimidation that were related to Defendant's attempt to dissuade Della from testifying was admissible. In *State v. Altgilbers*, 109 N.M. 453, 471, 786 P.2d 680, 698 (Ct.App.1989), *cert. denied*, 109 N.M. 419, 785 P.2d 1038 (1990), we held that one reason a defendant's acts of violence toward family members were admissible was that one could infer that the defendant's acts were attempts to dissuade the family from reporting his offenses. The reason for our holding was that attempts to suppress evidence are admissible to prove intent. *Id.* This holding is nothing more than a specific application of the rule that evidence showing consciousness of guilt is admissible. *See State v. Trujillo*, 95 N.M. 535, 541, 624 P.2d 44, 50 (1981) (evidence of flight or plan of flight or evidence of escape from incarceration is admissible because it tends to show consciousness of guilt); *State v. Kenny*, 112 N.M. 642, 646, 818 P.2d 420, 424 (Ct.App.) (evidence of flight is admissible even if ambiguous, and prejudice does not outweigh probative value even if defendant has other explanation for flight), *cert. denied*, 112 N.M. 499, 816 P.2d 1121 (1991).

In evaluating this issue, we are cognizant of the fact that the trial evidence was not entirely clear as to the reason for Defendant's outburst in his attorney's office. We acknowledge that Della testified that the outburst, including striking her, was based not on her conversation with the attorney but rather on a conversation Defendant overheard at the reception area during which Della was talking about a new boyfriend. However, there was also evidence that, during the trial, Della was being intimidated by members of Defendant's family.

## OTHER BAD ACTS

The district court recognized that the evidence of other bad acts included (a) the battering of Della that formed the basis of the charges of bribery, (b) battering and other abuse of Paul Corona about which Defendant did not want Della to testify, and (c) battering of Della that occurred prior to Patrick's death. The district court expressly ruled that the bribery of Della was directly relevant in the child abuse case. The battery and other abuse of Paul appeared to be considered relevant to provide context for the bribery charges and also probative in its own right on the child abuse charge. The earlier batteries on Della were considered relevant to the bribery charge, specifically as to whether Della believed that Defendant would carry out the threats and thus was capable of being bribed, and were also relevant to Della's credibility and her willingness to testify. In accordance with SCRA 1986, 14-5028 (Recomp.1986) and its trial rulings on the admission of the other-bad-acts evidence, the district court instructed the jury that "Evidence has been admitted concerning whether the defendant committed battery on Della Ruiz and Paul Corona. The evidence was received and you may consider it only for the purpose of determining the absence of mistake or accident in the death [of] Patrick Munoz."

■ We had occasion to rule on the admissibility of evidence of other bad acts in a

child abuse case in *State v. Aguayo,* 114 N.M. 124, 835 P.2d 840 (Ct.App.), *cert. denied,* 113 N.M. 744, 832 P.2d 1223 (1992). Recognizing the large potential for prejudice of other bad acts in that type of case, we held that district courts must be careful in admitting such evidence, must admit it only to prove some permissible factor under SCRA 1986, 11–404(B) (Repl.1994) other than propensity, and then must balance the probative value against the potential for prejudice. *Aguayo,* 114 N.M. at 128–32, 835 P.2d at 844–48. In an earlier case, *State v. Hogervorst,* 90 N.M. 580, 588, 566 P.2d 828, 836 (Ct.App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977), we pointed out that the fact that evidence is prejudicial is not grounds for excluding it; exclusion is required only when the danger of "unfair" prejudice, *see* SCRA 1986, 11–403 (Repl.1994), outweighs the legitimate prejudice that is otherwise known as probative value. We recently applied this principle in *State v. Jordan,* 116 N.M. 76, 80, 860 P.2d 206, 210 (Ct.App.), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993). The teaching of these cases is that the prejudice is unfair when the tendered evidence goes only to character or propensity. However, when the tendered evidence serves a legitimate purpose other than character or propensity, then that legitimate purpose should be balanced against the jury's tendency to use the evidence illegitimately.

Thus, in this case, we first evaluate whether the evidence had legitimate value other than as character or propensity evidence. We examine separately the evidence of (a) batteries on Della after Patrick's death, (b) the abuse of Paul, and (c) the batteries on Della prior to Patrick's death, and we hold that the first two items had legitimate probative value and were properly admitted. We further hold that, while the last item may not have been properly admissible in a trial of the child abuse charges alone, a number of factors combine to cause its admission not to require a reversal in this case.

### a. Post-death Batteries

◼ We have already held that the batteries on Della following Patrick's death that were intended to dissuade Della from testify-

ing were admissible. We consider it significant that this evidence included one item when Defendant hit Della's head against a bedpost until she was dizzy. Defendant told Della to stay up and walk around after this incident; "[h]e was afraid [she] was going to fall asleep and not wake up ... [l]ike Little Patrick [did]." Thus, the evidence of batteries on Della was not admitted as propensity evidence—to urge the jury to find Defendant guilty because he was a bad person. Rather, the evidence of batteries on Della was admitted to urge the jury to find Defendant guilty because he was doing things consistent with admitting his guilt. He was demonstrating that he knew he was guilty and thus showing his guilty conscience, admissible under *Kenny, Altgilbers,* and *Trujillo.* That guilty knowledge was tantamount to a confession and also negated Defendant's defense that Patrick's death was caused accidentally or by mistake. In view of the significant legitimate probative value of this evidence, we cannot hold that the district court abused its discretion in striking the balance in favor of its admission.

### b. Abuse of Paul

◼ The evidence of the abuse of Paul was also legitimately relevant, i.e., not bearing solely on character or propensity. The evidence concerning Paul provided the context for why Defendant was battering Della. *See Jordan,* 116 N.M. at 81, 860 P.2d at 211 (permitting admission of other bad acts so that jury will know context of other admissible evidence); *State v. Landers,* 115 N.M. 514, 520, 853 P.2d 1270, 1276 (Ct.App.1992) (admission of other bad acts placed charged acts in context), *cert. quashed,* 115 N.M. 535, 854 P.2d 362 (1993). *Compare State v. Crump,* 82 N.M. 487, 494–95, 484 P.2d 329, 336–37 (1971) (acts that are part of transaction for which defendant is being tried are admissible) *with State v. Rael,* 117 N.M. 539, 540–42, 873 P.2d 285, 286–88 (Ct.App.1994) (innuendo concerning drugs is not admissible in trial for possession of gun). Accordingly, the evidence of the abuse of Paul was relevant to the same theory of lack of accident or mistake that the batteries on Della were.

We recognize that the challenged evidence included multiple incidents of corporal punishment of Paul Corona (grabbing by the collar and shaking; choking; spanking; smacking; hitting with a wrench) as well as comments by Defendant about how the child needs to be "tough" and a comment about how Defendant would kill the child if he was not removed from Defendant's presence. Defendant argues that this is exactly the type of evidence that our decision in *Aguayo* was designed to exclude. The State counters that this evidence was much more probative than the sinister innuendo in *Aguayo*, and that the majority rule recognized both in New Mexico and in other jurisdictions would allow this type of evidence in any child abuse case to prove one or more of the exceptions to SCRA 11–404(B). *See United States v. Leight*, 818 F.2d 1297, 1303 (7th Cir.) (citing numerous state and federal cases), *cert. denied*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987); *State v. Robinson*, 93 N.M. 340, 600 P.2d 286 (Ct.App.) (prior injuries to the deceased child were admitted to prove absence of mistake or accident), *cert. denied*, 92 N.M. 532, 591 P.2d 286 (1979), *overruled on other grounds by Santillanes v. State*, 115 N.M. 215, 225 n. 7, 849 P.2d 358, 368 n. 7 (1993); *State v. Fuentes*, 91 N.M. 554, 577 P.2d 452 (Ct.App.) (same), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978). We need not decide whether the evidence concerning Paul, standing alone, would be admissible in this case. In contrast to that in *Aguayo*, the evidence challenged here had relevance to the bribery charge, which was in turn relevant to consciousness of guilt and lack of mistake or accident, and the State expressly offered such rationales below. Accordingly, we cannot say that the district court abused its discretion in admitting the evidence concerning Paul.

### c. *Pre-death Batteries*

The evidence concerning batteries of Della occurring prior to Patrick's death are more problematic. While they may have some relevance to the child abuse charges in that (1) the prior batteries could explain Della's hesitation in providing incriminatory testimony and thus (2) the prior batteries helped establish the bribery charge which, in

turn, helped prove Defendant's guilty knowledge, the relevance was sufficiently remote that it was likely substantially outweighed by the possibility of improper prejudice to Defendant. However, that does not end our inquiry, which on appeal includes whether the erroneous admission of evidence warrants a reversal.

A combination of several factors leads us to hold that the admission of the evidence of the earlier batteries of Della does not warrant a reversal. First, Defendant never expressly called to the district court's attention a separate problem with regard to this evidence. *See State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (party must make timely and specific objection). Second, the evidence of batteries of Della prior to Patrick's death was cumulative of evidence of batteries of Della after Patrick's death that were otherwise properly before the jury. *See State v. Gibson*, 113 N.M. 547, 556, 828 P.2d 980, 989 (Ct.App.) (prejudicial impact of evidence of prior crime was held marginal in light of other admitted evidence establishing criminal background), *cert. denied*, 113 N.M. 524, 828 P.2d 957 (1992); *State v. Griscom*, 101 N.M. 377, 380, 683 P.2d 59, 62 (Ct.App.) (admission of cumulative evidence may be harmless), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984). Finally, there is little to suggest in this case that the evidence unduly prejudiced the jury, which was unable to return verdicts on some of the charges. *Cf. State v. Montano*, 93 N.M. 436, 440, 601 P.2d 69, 73 (Ct.App.) (when jury convicts on some counts and acquits on some counts, record does not show prejudice from failure to sever charges), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979).

### d. *Other Contentions Regarding Other Bad Acts*

Defendant argues that, if the district court was going to admit evidence of other bad acts, it erred in failing to instruct the jury according to his tendered instruction. Defendant's requested instruction would have instructed the jury that:

> Evidence has been admitted concerning whether Patrick Ruiz committed battery

on Della Ruiz and Paul Corona. The evidence was received, and you may consider it *only* for the purpose of determining Mr. Ruiz' innocence or guilt on the charge of Bribery of a Witness by Use of Threats as charged in Counts Four and Five. You may *not* consider evidence of any alleged batteries on Della Ruiz or Paul Corona as evidence that Patrick Ruiz acted in conformity therewith as regards the charges of Child Abuse Resulting in Death or Great Bodily Harm, as charged in Count One and Count One in the Alternative, or the charges of Child Abandonment, as charged in Counts Two and Three.

We disagree with Defendant's contention. The district court properly instructed the jury in accordance with legitimate theories of lack of accident or mistake. Defendant's tendered instruction was erroneous in two ways. First, it would have limited the jury's consideration of the other-bad-acts evidence to the bribery charges whereas we have held that the evidence was admissible on the child abuse charges also. Second, it was in a form inconsistent with the uniform jury instructions in that it contained both a positive and negative statement of the same proposition. *See State v. Torres,* 99 N.M. 345, 347, 657 P.2d 1194, 1196 (Ct.App.1983).

■ Finally, Defendant contends that hearsay evidence concerning one assault on Paul should not have been admitted into evidence. Defendant acknowledges that the transcript does not contain a timely and specific objection to the alleged hearsay. Although Defendant contends that various portions of the transcript indicate that a hearsay objection was made in chambers, Defendant did not avail himself of the methods by which erroneous transcripts may be corrected, SCRA 1986, 12–211(C)(4) (Repl.1992), or unavailable transcripts may be recreated, SCRA 12–211(H). Accordingly, we do not reach this issue. *See Lucero,* 104 N.M. at 590, 725 P.2d at 269 (party must make timely and specific objection).

## EXCLUSION OF TESTIMONY

■ Defendant contends that the district court erred when it excluded evidence of what Paul told his grandmother, Julia Lova-to, a few days after Patrick's death. According to a tender of Lovato's testimony, she would have testified that Paul told her that he saw Patrick go outside and come back in, he saw Defendant wipe something off Patrick's face and put Patrick to bed, and he saw Defendant take Patrick out of the house and leave, telling Paul and his sister to stay home. Paul was called as a witness to testify about these things, but could not remember any of them. Among the reasons the district court excluded the tendered testimony was that Lovato was present in the courtroom during the whole trial in violation of the rule on exclusion of witnesses, SCRA 1986, 11–615 (Repl.1994), and Lovato had not been disclosed as a witness to the State.

■ The district court's decision to exclude testimony because of a violation of SCRA 11–615 is reviewed for an abuse of discretion. *State v. Trevino,* 113 N.M. 804, 809, 833 P.2d 1170, 1175 (Ct.App.1991), *aff'd,* 113 N.M. 780, 833 P.2d 1146 (1992). The purpose of SCRA 11–615 is to prevent witnesses from tailoring their testimony to the testimony of other witnesses. *State v. Simonson,* 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983). The purpose of witness disclosure rules is to give parties a fair opportunity to test the credibility of the witnesses and to eliminate surprise and gamesmanship. *See State v. Manus,* 93 N.M. 95, 103–04, 597 P.2d 280, 288–89 (1979). While no witness testified to actually witnessing the version of the events about which Lovato would have testified, that version was alluded to in opening statement and in the testimony of other witnesses who related what Defendant told them. Thus, Lovato could have easily tailored her testimony about what Paul allegedly saw to the defense version of the facts. We cannot say that the district court abused its discretion in excluding Lovato's testimony in these circumstances.

## SUFFICIENCY OF EVIDENCE

■ Defendant contends that the evidence was insufficient to support the conviction. Defendant's contention is based on a theory that since the jury convicted on the alternative count of placing the child in danger, this Court cannot now rely on any evi-

dence of Defendant's cruelly punishing or torturing the child. However, even if the jury had acquitted on the punishment or torture alternative (which it did not), we review the conviction and not the acquittal. *See State v. Leyba,* 80 N.M. 190, 195, 453 P.2d 211, 216 (Ct.App.), *cert. denied,* 80 N.M. 198, 453 P.2d 219 (1969). The question we address is whether there was sufficient evidence for a rational jury to find each element of the crime beyond a reasonable doubt. *See State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). Although we review the evidence in the light most favorable to the State, we must articulate a reasonable analysis pursuant to which the jury might have determined guilt. *See State v. Sizemore,* 115 N.M. 753, 758, 858 P.2d 420, 425 (Ct.App.), *cert. denied,* 115 N.M. 709, 858 P.2d 85 (1993). That analysis is that the jury could have found that Defendant placed the child in a harmful situation by shaking or hitting him, but without torturing or cruelly punishing him. The analysis would be that, without meaning to hurt or kill the child, Defendant inflicted some sort of physical punishment on the child that caused the injuries from which Patrick died. The evidence was that Defendant was the sole caretaker of Patrick that day. Patrick died from injuries to his head, which doctors testified were from blunt force impact and violent, forceful shaking. Although the defense theory was that Patrick fell from a tree or trailer, doctors testified that his injuries involved impacts on all different surfaces of his head. There were no defensive wounds to his hands or arms indicating an attempt to block the impact of falling. These factors were inconsistent with an accidental fall. The jury was free to reject Defendant's story regarding the fall as well as the defense expert who supported that theory. *See State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Defendant, by his actions afterwards, demonstrated knowledge that he inflicted the child's fatal injuries. Thus, there was sufficient evidence that Defendant placed Patrick in a situation that endangered his life.

## CUMULATIVE ERROR

█ Finally, Defendant contends that there was cumulative error. However, where there is no error, the doctrine of cumulative error does not apply. *State v. Larson,* 107 N.M. 85, 86, 752 P.2d 1101, 1102 (Ct.App.), *cert. denied,* 107 N.M. 74, 752 P.2d 789 (1988).

## CONCLUSION

Defendant's conviction of child abuse resulting in death is affirmed.

IT IS SO ORDERED.

HARTZ and BOSSON, JJ., concur.