Certiorari Denied, March 19, 2013, No. 34,033
Certiorari Granted, April 19, 2013, No. 34,074

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-052**

**Filing Date:  February 18, 2013**

**Docket No. 30,507**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**BILLY MAPLES,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Shoobridge, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}** Defendant Billy Maples appeals his convictions for voluntary manslaughter, false imprisonment, tampering with evidence, and conspiracy to commit tampering with evidence. Defendant raises six issues on appeal.  Because we conclude that the district court abused

its discretion in excluding evidence offered by Defendant regarding Victim's prior acts while under the influence of methamphetamine, we do not reach the remaining issues. Since the exclusion of the evidence denied Defendant his right to present a complete defense, we reverse Defendant's convictions and remand for a new trial.

**BACKGROUND**

**{2}** On January 4, 2009, Defendant agreed to drive a friend, Kaci Easter, from Carlsbad, New Mexico, to her home in Hobbs, New Mexico. Kaci had recently undergone surgery and was still recovering. She testified that she was feeling ill that night and was unable to make the drive herself. Since Defendant was driving Kaci's vehicle, he asked another friend, Rusty Reed, to follow him in Reed's car so that Reed could bring Defendant back to Carlsbad. Reed's girlfriend, Jennifer Cox (Victim), also decided to accompany the group to Hobbs.

**{3}** Kaci had never met Victim prior to the trip. Kaci testified that when she first met Victim at Reed's house that night, others in the group made reference to Victim's strange behavior, especially when she was under the influence of methamphetamine. Kaci testified to noticing some of this erratic behavior, including Victim talking to herself or to things that were not there.

**{4}** The group did not leave Carlsbad until sometime after 11:00 that night. When they arrived in Hobbs, Reed and Defendant decided that they should wait until daylight to return to Carlsbad due to the weather. Though Kaci initially stayed up with the group, she eventually took a prescription pain pill and went to bed.

**{5}** After Kaci went to the bedroom, Defendant, Reed, and Victim remained in the living room area. Reed testified that Victim was both smoking and injecting methamphetamine. The medical examiner would later testify that at the time of Victim's death, the amount of methamphetamine in her system was in the fatal range. Victim's behavior after using the methamphetamine became increasingly erratic, and she began wandering through the house picking up Kaci's belongings. She was also playing with two knives that she often kept with her. Defendant was apprehensive about Victim's behavior and particularly about how she was handling the knives. At one point, Defendant took the knives from Victim, although he would later return them to her. Eventually, Reed became annoyed with the situation and decided to leave earlier than planned for Carlsbad. Neither Victim nor Defendant left with him.

**{6}** The sequence of events that ultimately led to Victim's death began when she entered Kaci's bedroom. Kaci testified that she awoke to Victim hovering over her bed with the two knives in her hands. Defendant intervened and wrestled Victim to the floor while attempting to disarm and restrain her. Kaci testified that what followed was a long and violent struggle between Defendant and Victim. Kaci testified that Victim was "uncontrollable" and that it was "hard to articulate just how violent and how wild she was." Kaci testified that

Defendant held Victim on the floor and was telling her to calm down and that he would let her up but that she continued thrashing and snarling. Kaci testified that while Defendant was holding Victim on the floor, she was unsure whether Victim was still in possession of the knives. Defendant, on the other hand, told police that he disarmed Victim during the struggle, although Victim grabbed the knives back at least once.

**{7}** In his statement to police, Defendant admitted that he put Victim in a choke hold on three occasions after taking away the knives but stated that he did not choke her to unconsciousness and that each time he released her she would continue to violently struggle. Defendant eventually asked Kaci for duct tape so that he could restrain Victim. With Kaci holding Victim's legs, Defendant was able to wrap Victim's hands and feet with duct tape and twine. However, even with her hands and feet restrained, Victim, who was on her stomach, continued to struggle, and Defendant continued to straddle her.

**{8}** Kaci testified that she left the room on multiple occasions due to concerns regarding her recent surgery and to phone Reed regarding Victim's behavior. On one of these trips out of the room, Defendant shouted out to Kaci that Victim had stopped breathing. When Kaci reentered the room, Defendant was performing CPR on Victim, who was apparently still restrained until Kaci cut the tape around her hands. Defendant told police that he performed CPR for nearly an hour until he realized that he was not going to be able to revive Victim.

**{9}** Neither Kaci nor Defendant immediately contacted police after Victim's death. Instead, Defendant wrapped Victim's body in a sheet and placed it in a detached garage. Later that morning, Kaci's estranged husband arrived at Kaci's home. Kaci went out to his car and told him that there was a dead body in the garage. He then drove Kaci to the police station where she told officers what had happened. Officers arrived at Kaci's home soon after and confirmed that Victim was dead in the garage. The officers made contact with Defendant and took him to the police station. Both Kaci and Defendant were subsequently arrested and charged in the death of Victim.

**{10}** Prior to trial, Defendant submitted an amended witness list that identified three police officers who had prior experiences with Victim months before her death while she was purportedly under the influence of methamphetamine. Two officers in particular were prepared to testify to Victim's unusual strength, her continued resistance to restraint, and her seeming imperviousness to pain when the officers attempted to arrest her. The State filed a motion in limine to exclude this testimony as impermissible character evidence of a victim under Rule 11-404(A) NMRA.

**{11}** During arguments on the motion, Defense counsel made a proffer of evidence that included the following remarks:

> [The officer] talks about how . . . in his encounters with her, he could not obtain any pain complaints with her. It's as if she just wasn't there. [And] about how she struggled and scratched and kicked. And, your honor, his

3

descriptions of her behavior are almost verbatim of descriptions of behavior that both [Kaci] and [Defendant] described at the time of these events. . . . [H]e describes an unbelievable amount of strength and violence on the part of this woman . . . and that, again, several police officers had an almost unbearable time with trying to calm her, contain her, and she still was violent.

During a second round of arguments on the admissibility of the testimony, defense counsel again stated:

In two instances within about a week of each other, [the officer] came into physical contact with [Victim] and that she seemed to be essentially impervious to any kind of control tactic that he used as in pain compliance. . . . He got her down and she was struggling with such force that he was having a very difficult time trying to contain her with handcuffs and [another officer] came to his assistance . . . and held her legs so that he could handcuff her. And that even after handcuffed, she continued to struggle, [and] to fight[.]

**{12}** The district court ultimately agreed with the State and excluded the testimony. Defendant was subsequently convicted on all counts and now appeals.

## DISCUSSION

### Character Evidence of the Victim in Self Defense Cases

**{13}** We review the exclusion of evidence for abuse of discretion. *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995), *abrogated on other grounds as recognized by State v. Granillo-Macias*, 2008-NMCA-021, 143 N.M. 455, 176 P.3d 1187.

**{14}** We begin our analysis with an examination of the rules governing the admissibility of character evidence of a victim when offered by a defendant claiming self defense. In this case, the State and Defendant disagree on whether our Supreme Court's holding in *State v. Armendariz*, 2006-NMSC-036, 140 N.M. 182, 141 P.3d 526, *overruled on other grounds by State v. Swick*, 2012-NMSC-018, ¶ 31, 279 P.3d 747 applies, and therefore whether the limitations placed on such evidence under Rules 11-404(A) and -405 NMRA are applicable to the present facts. As examined in more detail below, the district court, relying on *Armendariz*, ruled that since Defendant had no knowledge prior to his encounter with Victim of the incidents about which the officers would testify, testimony regarding the specific incidents of Victim's conduct were inadmissible. *See Armendariz*, 2006-NMSC-036, ¶ 17 ("[U]nder Rule 11-405(B), evidence of specific instances of the victim's prior violent conduct of which the defendant was aware may be admitted to show the defendant's fear of

4

the victim.").

**{15}**    Under Rule 11-404(A)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In criminal cases, however, an exception exists that allows a defendant to offer "evidence of a victim's pertinent trait" for the purpose of proving that the victim acted in conformity with that trait on a particular occasion. Rule 11-404(A)(2)(b); *State v. Baca*, 114 N.M. 668, 671, 845 P.2d 762, 765 (1992). The methods of proving the victim's pertinent character trait are governed by Rule 11-405, which permits two manners of proof. If the character evidence is admissible for propensity purposes, it may be proved by reputation or opinion evidence. Rule 11-405(A) ("When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by . . . opinion."). In addition, when the "person's character or character trait is an essential element of a charge, claim, or defense," proof of the character or trait may be made by specific instances of that person's conduct. Rule 11-405(B).

**{16}**    These general rules regarding character evidence find specific application in the context of self defense, as was clarified in *Armendariz*. *See Armendariz*, 2006-NMSC-036, ¶ 17. A claim of self defense has three elements: "(1) there was an appearance of immediate danger of death or great bodily harm to the defendant[,] (2) the defendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed the victim because of that fear[,] and (3) a reasonable person in the same circumstances would have acted as the defendant did." *Id.* Generally, a defendant claiming self defense will seek to introduce character evidence of the victim for two purposes. First, where there is a dispute as to who initiated the attack, the defendant may seek to introduce the evidence to show that the victim was the first aggressor. *State v. Baca*, 115 N.M. 536, 540, 854 P.2d 363, 367 (Ct. App. 1993). Second, the defendant may seek to introduce the evidence to show that the defendant's apprehension or fear of the victim was reasonable. *See id.* Whether a defendant can introduce specific instances of the victim's conduct depends on which of these two purposes the defendant is seeking to establish with the character evidence.

**{17}**    In *Armendariz*, our Supreme Court held that "evidence of specific instances of a victim's prior violent conduct may not be admitted to show that the victim was the first aggressor" under Rule 11-405(B). *Armendariz*, 2006-NMSC-036, ¶ 17. This is because the character evidence is being offered for a propensity purpose—for the jury to infer that the victim's violent disposition led to the victim being the first aggressor. Consequently, the method of proving this element is limited to reputation or opinion evidence. *See id.* ("[A] victim's violent character is not an essential element of a defendant's claim of self defense, but rather circumstantial evidence that tends to show that the victim acted in conformity with his or her character on a particular occasion. . . . [O]nly reputation or opinion evidence should be admitted to show that the victim was the first aggressor."). It is immaterial whether the defendant was aware of the victim's violent disposition at the time of the incident when reputation or opinion evidence is sought to be introduced for this propensity-based reason. *Baca*, 115 N.M. at 539, 854 P.2d at 366.

5

**{18}** But when the defendant seeks to introduce evidence to show his or her subjective apprehension of the victim—that the victim's violent disposition gave the defendant reason to fear the victim—the defendant may introduce specific instances of the victim's violent conduct. *Armendariz*, 2006-NMSC-036, ¶ 17 ("When a defendant is claiming self[]defense, his or her apprehension of the victim is an essential element of his or her claim. Therefore, under Rule 11-405(B), evidence of specific instances of the victim's prior violent conduct of which the defendant was aware may be admitted to show the defendant's fear of the victim."). Unlike the first aggressor issue, which does not require the defendant to possess knowledge of the victim's past violent acts, a defendant seeking to introduce evidence of the victim's violent disposition to prove his or her apprehension of the victim must establish that he or she had knowledge of the victim's past violent acts at the time of the incident. *Id.* Otherwise, the evidence would not be relevant to the defendant's subjective state of mind during the encounter and his or her belief in the necessity of self defense. *See Baca*, 114 N.M. at 671, 845 P.2d at 765 ("[I]f the defendant had no knowledge of the victim's violent conduct it could not very well have been a basis for his apprehension.").

**Because the Evidence Was Not Character Evidence, the District Court Abused Its Discretion in Excluding the Officers' Testimony**

**{19}** With this backdrop in mind, we turn to the specifics of the district court's ruling. During arguments on the State's motion in limine to exclude the officers' testimony, the State conceded that Victim was the first aggressor and agreed with the district court that the issue at the center of this case was whether Defendant used reasonable force in response to the threat posed by Victim. Thus, both the State and the district court recognized that neither of the scenarios contemplated by *Armendariz*—the identity of the first aggressor or Defendant's subjective apprehension of the Victim—were at issue. Instead, the issue involved the third element of self defense: whether a reasonable person in Defendant's position would have acted the same way. As a result, while the district court was correct in concluding that *Armendariz* did not provide a basis for admitting the evidence, it was incorrect in concluding that *Armendariz* compelled a ruling that the evidence was inadmissible.

**{20}** In ruling that *Armendariz* foreclosed the admission of the officers' testimony, the district court improperly concluded that, because the officers were to testify to prior specific instances of violent conduct by Victim when believed to be under the influence of methamphetamine, the evidence was inadmissible character evidence. But the evidence's status as a prior specific incident of violent conduct by Victim is not determinative of its status as character evidence such that its admissibility is governed only by the rules clarified in *Armendariz*. Rather, the limitations on evidence embodied in Rule 11-405(B) apply only to prior specific instances of conduct offered to prove action in conformity with character and do not apply to evidence offered for a non-character purpose, such as prior acts evidence under Rule 11-404(B). *See Baca*, 115 N.M. at 540, 854 P.2d at 367 (stating that "evidence of prior specific incidents may also be admitted under [Rule] 11-404(B)"). In other words, when the admissibility of evidence is not governed by Rule 11-404(A) because, for instance,

6

it is not offered to prove the victim's violent disposition, the Rule 11-405 methods of proof do not operate to exclude the evidence, even when such evidence is an incident of specific conduct. *C.f. State v. Duncan*, 111 N.M. 354, 356, 805 P.2d 621, 623 (1991) ("Rule [11-]405 deals generally with permissible methods of *proving character* and provides that when character is relevant it may be proved by testimony as to reputation or in the form of an opinion and, in cases to which Rule [11-]405(B) applies, by evidence of specific instances of conduct." (emphasis added)).

{21}     The question then is whether the evidence Defendant sought to admit can properly be considered character evidence.  The State argues that it is based upon its opinion that Defendant's purpose in seeking admission of the evidence was to show that, since Victim "acted with truly unusual violence and seeming imperviousness to pain on two prior occasions," it is more likely "that she acted with truly unusual violence and seeming imperviousness to pain on the occasion at issue."  But propensity itself is not the basis for determining character evidence. *See State v. Lamure*, 115 N.M. 61, 70, 846 P.2d 1070, 1079 (Ct. App. 1992) (Hartz, J., specially concurring) ("Character is a propensity that is both general (i.e. propensity for 'honesty' or 'dishonesty,' 'violence' or 'non-violence') as opposed to specific (i.e., propensity for executing certain kinds of violent or dishonest acts, or for executing them in a certain manner) and possessed of good or bad moral connotations." (internal quotation marks and citation omitted)).  "All character evidence offered to show action in conformity with character is propensity evidence, but not all propensity evidence is character evidence."  Richard B. Kuhns, *The Propensity to Misunderstand the Character of Specific Acts Evidence*, 66 Iowa L. Rev. 777, 780, 794 (1981).  While we agree with the State that the testimony would have the effect of inviting the fact-finder to make an inference regarding Victim's conduct on the night at issue based upon her previous encounters with the officers, the State's propensity argument omits the cornerstone of any character evidence determination: the relevant character trait the evidence was offered to prove, *from which* an improper inference would then have been drawn.  Stated another way, specific acts evidence is character evidence when it invites the fact-finder to draw an otherwise impermissible inference from a person's past conduct to his or her present character and, ultimately, to the person's actions during the incident at issue. *C.f. State v. Martinez*, 2008-NMSC-060, ¶ 16, 145 N.M. 220, 195 P.3d 1232 ("Because conduct reflects character, knowledge of character is necessarily helpful in predicting conduct.").

{22}     In the context of self defense, the only likely pertinent character trait of a victim, from the defendant's point of view, would be the victim's violent disposition. *See* Fed. R. Evid. 404 advisory committee's note (noting one use of circumstantial character evidence is "evidence of a violent disposition to prove that the person was an aggressor in an affray").  But here, where Defendant proffered testimony regarding specific violent acts of Victim while under the influence of methamphetamine, which directly tended to corroborate his statements regarding the specific mental and physical characteristics exhibited by Victim, we cannot conclude that the primary purpose of the evidence was to cause the jury to infer that Victim had a violent disposition and acted in conformity with that disposition on the night of her death. *See Brown v. State*, 953 P.2d 1170, 1176-77 (Wyo. 1998) ("Behavior or

7

acts are often behind descriptions of character, but describing acts is not the same thing as giving character evidence[.] . . . In such circumstance, close attention to relevance may help resolve any potential problems."). Rather, the evidence tended to prove that Victim acted in conformity with her body's response to a significant amount of methamphetamine. That she displayed unusual physical and mental characteristics in her encounter with Defendant and previously with the officers, especially when attempts were made to restrain her, was no reason to exclude the evidence on the basis that it was character evidence or otherwise intended to prove actions by Victim in conformity with a generalized disposition to violence. *See State v. Swavola*, 114 N.M. 472, 477, 840 P.2d 1238, 1243 (Ct. App. 1992) ("The trait at issue—injuring oneself in order to support a claim of beating by one's spouse—is not a sufficiently general propensity to fit the 'character' rubric. Rather, the testimony was evidence of a . . . peculiar course of conduct, that is probative of a similar course of conduct at a later time."). We therefore conclude, under the unique circumstances of this case, that the evidence was not character evidence, and the district court abused its discretion in excluding the evidence under Rules 11-404(A) and 11-405. *Stanley*, 2001-NMSC-037, ¶ 24 (holding that the "denial of an opportunity for [the d]efendant to develop a major part of his defense was an abuse of discretion"); *State v. Salgado*, 112 N.M. 793, 796-97, 819 P.3d 1351, 1354-55 (Ct. App. 1991) (holding the same in regard to exclusion of the defendant's evidence in context of self defense).

**The Officers' Testimony Was Admissible Under Rule 11-404(B)**

**{23}**     Defendant would not be prejudiced by the exclusion of the evidence unless the evidence was, in fact, admissible. *See Stanley*, 2001-NMSC-037, ¶ 19 (stating error must be prejudicial to be reversible). "All relevant evidence is generally admissible, unless otherwise provided by law[.]" *Id.* ¶ 6. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. Here, if the jury were to determine that Victim did exhibit the physical and mental characteristics attributed to her by Defendant, then the jury may have found it more probable that Defendant was justified in his use of force against Victim. Testimony regarding previous eyewitness accounts of this conduct would certainly be relevant in determining the outcome of this case.

**{24}**     Because we have concluded that evidence regarding the prior acts of Victim was relevant and not character evidence, the proper rule governing its admissibility was Rule 11-404(B). *See* Rule 11-404(B)(2) (stating that the "evidence [of a crime, wrong, or other act] may be admissible for another purpose" other than to prove action in conformity with character); *Baca*, 115 N.M. at 540, 854 P.2d at 367 (noting that evidence of specific incidents of conduct may be admitted under Rule 11-404(B)); *Lamure*, 115 N.M. at 70, 846 P.2d at 1079 (Hartz, J., specially concurring) (noting that Rule 11-404(B) serves as a proper basis for admitting non-character propensity evidence). Rule 11-404(B)(2) lists a certain number of purposes for which other acts evidence may be admissible, but the enumerated purposes are not exclusive, and "another purpose" can be established so long as it is "relevant to an issue besides the inference that the [person] acted in conformity with his or

8

her character." *State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828; *see State v. Gutierrez*, 2011-NMCA-088, ¶ 18, 150 N.M. 505, 263 P.3d 282 (stating that proponent of Rule 11-404(B) evidence must make a "sufficient showing that the evidence would serve a legitimate purpose other than to show character" (internal quotation marks and citation omitted)), *cert. denied*, 2011-NMCERT-008, 268 P.3d 513. Once the proponent of the other acts evidence has identified the consequential fact to which the evidence is directed, the court must determine whether the "probative value related to its permissible purpose is substantially outweighed by the factors enumerated in Rule 11-403 [NMRA]." *Gallegos*, 2007-NMSC-007, ¶ 22.

**{25}**    It was undisputed that the material fact to which the officers' testimony was directed was whether Defendant used reasonable force in response to the threat posed by Victim. Specifically, as the State argued, the issue was whether Victim remained a threat once her hands and feet were bound such that further restraint was warranted. Defendant argued, therefore, that the purpose of the evidence was to corroborate the defense's claim that Victim's behavior while on methamphetamine necessitated Defendant's continued use of force throughout the encounter.

**{26}**    In some circumstances, evidence that tends to corroborate one party's version of the facts on a material and disputed issue can be the basis for admissibility under Rule 11-404(B). *See State v. Dietrich*, 2009-NMCA-031, ¶ 44, 145 N.M. 733, 204 P.3d 748 (concluding that nude photographs of the victims taken by the defendant charged with criminal sexual contact of a minor were admissible under Rule 11-404(B) because the photographs "corroborated the victims' testimony and provided context for the events that occurred"); *see also United States v. James*, 169 F.3d 1210, 1214 (9th Cir. 1999) (holding that records evidencing the victim's prior violent acts, of which the defendant was not aware at the time of the incident, were admissible in order to corroborate the defendant's testimony regarding her fear of the victim). In *State v. Fish*, 213 P.3d 258 (Ariz. Ct. App. 2009), the Arizona Court of Appeals held that a victim's specific violent acts were admissible under Arizona's version of Rule 11-404(B) as "relevant to corroborating [the d]efendant's version of the events leading up to the shooting[,]" especially where the state argued that the defendant had exaggerated the victim's acts during the incident and the defendant's credibility was critical to his claim of self defense because there were no other eyewitnesses. *Fish*, 213 P.3d at 271-73.

**{27}**    We conclude that corroboration of Defendant's version of events was a permissible purpose in this case. We are aware, however, that there can be a fine line between the admissibility of specific acts evidence of a victim's prior violent conduct for the purpose of corroborating a defendant's version of events and an impermissible propensity purpose. We emphasize that establishing a corroborative purpose for other acts evidence is not an open door to admissibility. Rather, like all evidence, its admissibility is subject to Rule 11-403, which provides district courts with the best means of excluding evidence that carries the potential for improper use by the fact-finder, even if it has been offered for a legitimate purpose. *See* Rule 11-403 ("The court may exclude relevant evidence if its probative value

9

is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); *State v. Ruiz*, 119 N.M. 515, 519, 892 P.2d 962, 966 (Ct. App. 1995) ("[P]rejudice is unfair when the tendered evidence goes only to character or propensity. However, when [Rule 11-404(B)] evidence serves a legitimate purpose other than character or propensity, then that legitimate purpose should be balanced against the jury's tendency to use the evidence illegitimately.").

**{28}** Here, the officers' testimony regarding Victim's previous conduct was highly probative of Defendant's claim that Victim remained a threat throughout the duration of the incident. Evidence as to the height and weight differences between Victim and Defendant was before the jury. It was central to Defendant's claim that Victim posed a threat to, or could be considered uncontrollable by, a man nearly sixty-five pounds heavier once Victim was disarmed. And with only the testimony of Kaci at trial and the video of Defendant's statement to police providing the jury with any insight into Victim's conduct during the incident, the testimony from law enforcement officers regarding their encounters with Victim was highly corroborative of Defendant's claim that Victim exhibited certain extreme physical and mental characteristics when under the influence of methamphetamine that could not otherwise be inferred from her basic physical description. *See Fish*, 213 P.3d at 275 ("This evidence is highly probative of the veracity of [the d]efendant's description of what he faced on the day of the shooting. . . . [T]hese witnesses described exactly what [the d]efendant had described to police about the [v]ictim's behavior—that he was irrationally aggressive and violent and extremely frightening."). While we make no comment on the ultimate believability of Kaci's and Defendant's version of events, we conclude that the officers' strikingly similar accounts of Victim's physical and mental characteristics while she was on methamphetamine were strongly probative of whether a reasonable person in Defendant's same circumstances would have continued to exert force against Victim throughout the duration of his struggle with her.

**{29}** We therefore conclude that portions of the officers' testimony were admissible under Rule 11-404(B). That is not to say that the full account of the officers' experiences with Victim is necessary for Defendant's purpose. For instance, the context of the encounters, such as the reason for Victim's arrest or that Victim was found wandering the streets nude, was irrelevant and potentially prejudicial. However, we are confident that the district court can appropriately tailor the officers' testimony on remand.

**There Was Sufficient Evidence to Convict Defendant of Voluntary Manslaughter**

**{30}** Because we reverse Defendant's convictions on the basis of erroneously excluded evidence, we address Defendant's contention that there was insufficient evidence to support his conviction for voluntary manslaughter. *See State v. Kerby*, 2005-NMCA-106, ¶ 34, 138 N.M. 232, 118 P.3d 740 (noting that retrial is not barred by double jeopardy if the evidence at trial was sufficient to support the defendant's conviction). We review the sufficiency of the evidence pursuant to a substantial evidence standard. *State v. Sutphin*, 107 N.M. 126,

10

131, 753 P.2d 1314, 1319 (1988).  Under a substantial evidence standard, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (internal quotation marks and citation omitted).

**{31}**    In this case, the State was required to prove beyond a reasonable doubt that (1) Defendant killed Victim; (2) Defendant knew that his acts created a strong probability of death or great bodily harm to Victim; (3) Defendant acted as a result of sufficient provocation; (4) Defendant did not act in defense of another; (5) Defendant did not act in self defense; and (6) the incident took place in New Mexico on or about the 5th day of January, 2009.

**{32}**    Defendant argues that the State failed to establish that the amount of force used by Defendant was sufficient to kill a "normal" human being, presumably asking us to distinguish between a sober victim and a significantly methamphetamine-intoxicated victim. Based on the testimony at trial, we see no basis to draw such a distinction.  In Defendant's statement to police, he admitted that he "choked out" Victim multiple times during the altercation.  Furthermore, Kaci's testimony established that Victim stopped breathing after Victim's hands and feet had been restrained and while Defendant continued to struggle with Victim on the ground.  Finally, the medical examiner testified to a reasonable degree of medical certainty that Victim's death was caused by "cervical compression or neck compression" with physical restraint and methamphetamine intoxication identified to be contributing factors.  Considering this evidence in the light most favorable to the verdict, we conclude that a rational jury could find beyond a reasonable doubt that Defendant knowingly exerted sufficient force to strangle Victim while she was restrained and no longer constituted a threat to Defendant or Kaci.  Accordingly, there was sufficient evidence to support Defendant's conviction for voluntary manslaughter, and double jeopardy principles do not preclude retrial.

**CONCLUSION**

**{33}**    Based upon the foregoing, we reverse Defendant's convictions and remand for a new trial.

**{34}    IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

11

**J. MILES HANISEE, Judge**

**Topic Index for *State v. Maples*, No. 30,507**

**APPEAL AND ERROR**
Remand
Substantial or Sufficient Evidence

**CRIMINAL LAW**
Defense of Another
Intoxication
Self-defense
Voluntary Manslaughter

**CRIMINAL PROCEDURE**
Double Jeopardy
Motion in Limine
New Trial
Self-defense
Substantial or Sufficient Evidence

**EVIDENCE**
Character Evidence